UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| LEGAL SEA FOODS, LLC, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) Case 1:20-cv-10850-NMG |
| STRATHMORE INSURANCE | ) |
| COMPANY, | ) |
| | ) |
| Defendant. | ) |
| | ) |

## MEMORANDUM IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS PURSUANT TO FED. R. CIV. P. 12(b)(6)

## I.  INTRODUCTION

The COVID-19 pandemic has affected the public and many businesses throughout the country in unprecedented ways. Government orders designed to curb the spread of COVID-19, coupled with sudden changes in consumer behavior associated with social distancing, have strained private enterprises, including many in the restaurant industry. But these challenging and unfortunate circumstances do not create insurance coverage for losses that fall outside the terms of a policyholder's insurance contract.

Plaintiff Legal Sea Foods, LLC alleges that to combat the COVID-19 pandemic, government officials in the states where it operates its restaurants issued orders between March and May 2020 that temporarily suspended on-premises dining at restaurants, but permitted them to continue preparing and selling food and beverages to customers through carry-out and delivery services. While countless restaurants chose to remain open and provide carry-out and delivery services to their customers in the ensuing months, Plaintiff closed its 32 restaurants in mid-March 2020, having concluded that carry-out and delivery services were inconsistent with its "brand."

Plaintiff claims that the COVID-19 pandemic and the closure of its restaurants had a "devastating effect" on its business. In its First Amended Complaint ("Complaint"), Plaintiff seeks a judgment declaring that the commercial insurance policy it purchased from Defendant Strathmore Insurance Company ("Strathmore") covers its claimed losses, and requests damages against Strathmore on the theories that its refusal to pay Plaintiff's claim breached the insurance contract and was an unfair trade practice. In asserting these claims, Plaintiff ignores the material terms of the policy and fails to plead sufficient facts to support a plausible claim for coverage under the policy. The Complaint should be dismissed pursuant to Fed. R. Civ. P. 12(b)(6) on at least the following grounds:

*First*, to state a claim for coverage under the policy's Civil Authority provision, Plaintiff was required, at a minimum, to plead facts showing that civil authorities took action that completely prohibited and blocked access to its restaurants. The Complaint contains no such factual allegations, and the government orders cited in the Complaint (and attached to this Memorandum) confirm that the opposite is true: the orders, without exception, permit access to restaurants and allow them to prepare food and beverages for carry-out and delivery service to their customers. As Plaintiff has not pled that a civil authority prohibited access to any of its restaurants, it is not entitled to Civil Authority coverage as a matter of law.

*Second,* to plead a plausible claim for coverage under the policy's Business Income and Extra Expense provisions, Plaintiff needed to present factual allegations sufficient to establish, at a minimum, that there was "direct physical loss of or damage to property" at each of the 32 restaurant premises described in the policy, and that such loss or damage caused a necessary suspension of its restaurant operations at each location. The Complaint alleges no such facts. It is evident from the Complaint that Plaintiff opted to shut down its operations not because of any

property damage that happened at its restaurants, but due to a factor external to its business: government orders that restricted how it could run its restaurants. Importantly, though Plaintiff's insurance claim is predicated on the COVID-19 pandemic, *it does not allege that Coronavirus was present in any of its restaurants*. While Strathmore disputes that Coronavirus is capable of causing "physical loss of or damage to property," it does not seek adjudication of that issue on this Motion, since the Complaint does not allege that any of Plaintiff's restaurants was touched by Coronavirus. Because Plaintiff cannot plausibly show that it sustained any "direct physical loss of or damage to property" at its insured premises, it has no contractual right to Business Income or Extra Expense coverage.

*Third*, because the Complaint fails to state a plausible entitlement to insurance coverage, Plaintiff's purported cause of action under Mass. Gen. L. c. 93A also should be dismissed, as it is grounded in Strathmore's decision to disclaim coverage and the investigation that led to it. However, even if the Court were to find that the Complaint pleads a viable claim for breach of contract or for declaratory relief (it does not), Count III should still be dismissed because it is clear from the Complaint that the parties' disagreement is simply a *bona fide* dispute between sophisticated commercial entities over the interpretation and application of a contract, which does not support liability under Chapter 93A.

## II.     RELEVANT FACTS ALLEGED IN THE COMPLAINT

### A.     The COVID-19 Pandemic and Plaintiff's Decision to Close Its Restaurants

Plaintiff commenced this lawsuit against Strathmore on May 4, 2020, asserting in its Complaint causes of action for declaratory relief and breach of contract. (Doc. 1). Plaintiff amended its Complaint on June 5, 2020, adding a purported claim for damages under Mass. Gen. L. c. 93A. (Doc. 14 ("Compl.")). The Complaint alleges that Plaintiff operates seafood restaurants in Massachusetts, Rhode Island, New Jersey, Pennsylvania, Virginia, and Washington, D.C.

(Compl., ¶10). Plaintiff purchased a commercial property insurance policy from Strathmore to insure against property damage and business interruption at its 32 locations (the "Policy"). (*Id.* ¶15). The Policy bears policy number 8120T24753 and has effective dates of March 1, 2020 to March 1, 2021.[1]

During the term of the Policy, SARS-CoV-2 (also known as "Coronavirus") spread across the globe. (*Id.* ¶17). According to the Complaint, nearly two million Americans have suffered from confirmed cases of COVID-19, the disease caused by Coronavirus, with more than 102,000 Americans having died from the disease. (*Id.* ¶18). In response to the COVID-19 pandemic, "state and local governments . . . imposed directives requiring residents to remain in their homes unless performing 'essential' activities," like purchasing food and medicine, going to see a doctor, or exercising. (*Id.* ¶40). Governors and other officials also issued orders that temporarily banned on-premises dining at restaurants but permitted restaurants to continue preparing and selling food and beverages for carry-out and delivery (collectively, the "Orders"). (*Id.* ¶¶46, 65-70).[2] Nonetheless, Plaintiff opted to close its restaurants based on its assessment that "[c]arry out and delivery services are not feasible for Legal Sea Foods given its menu, brand, and business . . ." (*Id.* ¶47). Despite Plaintiff's concession that restaurants were permitted to continue preparing and selling food and beverages to customers for carry-out and delivery in all jurisdictions in which it operates, the Complaint concludes that the Orders "operated to prohibit access" to its premises. (*Id.* ¶63).

---

[1] A copy of the Policy is attached to the Complaint as Exhibit A. (Compl., ¶15 and Ex. A (Doc. 14-1)).

[2] The Complaint cites a series of orders issued by government officials but does not attach them. For the Court's convenience, Strathmore attaches those orders to this Memorandum. They are organized in Exhibits 1-6 by jurisdiction. The Court may take judicial notice of the orders in ruling on this Motion. *See Trans-Spec Truck Serv. v. Caterpillar Inc.*, 524 F.3d 315, 321 (1st Cir. 2008). For the Court's convenience, Strathmore has highlighted the text of the orders that pertain to restaurants.

In addition, the Complaint alleges that COVID-19 and the Orders have caused and continue to cause Plaintiff a loss of business income, as well as "physical loss of or damage to property." (*Id.* ¶¶4 *et seq.*). The Complaint, however, does not disclose the nature of any property loss or damage, or the locations where it allegedly occurred. Additionally, while the Complaint alleges that Coronavirus can survive on contaminated objects and surfaces and describes studies finding that the virus can be transmitted through human contact with contaminated surfaces or objects, it does <u>not</u> allege that Coronavirus was present at or in any of Plaintiff's restaurants. (*Id.* ¶¶24-39).

### B.    The Policy and the Insurance Claim

On or about March 23, 2020, Plaintiff submitted a claim to Strathmore for its alleged business interruption losses resulting from the closure of its restaurants during the COVID-19 pandemic. (*Id.* ¶¶75-76). After an investigation that allegedly consisted of a single, brief telephone call with Plaintiff's General Counsel, (*Id.* ¶¶76-79), Strathmore sent Plaintiff a letter dated March 26, 2020, in which it declined to pay the claim, citing the Policy provisions and facts upon which its decision was based. (*Id.* ¶87). Strathmore maintained its coverage position in subsequent communications sent in response to further inquiries from Plaintiff. (*Id.* ¶¶92-94, 109).

The Policy provides commercial property and business interruption insurance. In the Designation of Premises Schedule, the Policy lists 32 insured locations in Massachusetts, the District of Columbia, New Jersey, Pennsylvania, Rhode Island, and Virginia. (Policy, Doc. 14-1, at pp. 6-9 of 235). The Policy's Business Income (and Extra Expense) Coverage Form provides coverage for Business Income on the following terms:

> We will pay for the actual loss of Business Income you sustain due to the necessary "suspension" of your "operations" during the "period of restoration". The "suspension" must be <u>caused by direct physical loss of or damage to property at premises which are described in the Declarations</u> and for which a Business Income Limit of Insurance is shown in the

> Declarations. The loss or damage must be caused by or result from a Covered Cause of Loss…..

(*Id.* at p. 133 of 235 (underscores added)). The same form also provides Extra Expense coverage on these terms:

> **b.** Extra Expense means necessary expenses you incur during the "period of restoration" that you would not have incurred if there had been no <u>direct physical loss or damage to property</u> caused by or resulting from a Covered Cause of Loss.

(*Id*. (underscores added)).

The Complaint also claims entitlement to the Policy's Civil Authority Additional Coverage, which provides, in relevant part, as follows:

> When a Covered Cause of Loss causes <u>damage to property other than property at the described premises</u>, we will pay for the actual loss of Business Income you sustain and necessary Extra Expense <u>caused by action of civil authority that prohibits access to the described premises</u>, provided that both of the following apply:
>
> **(1)** Access to the area immediately surrounding the damaged property is prohibited by civil authority as a result of the damage, and the described premises are within that area but are not more than one mile from the damaged property; and
>
> **(2)** The action of civil authority is taken in response to dangerous physical conditions resulting from the damage or continuation of the Covered Cause of Loss that caused the damage, or the action is taken to enable a civil authority to have unimpeded access to the damaged property.

(*Id.* at p. 134 of 235 (underscores added)).

## III.   LEGAL STANDARDS

### A.   Standard For Dismissal Pursuant to Fed. R. Civ. P. 12(b)(6)

To survive a motion to dismiss under Fed. R. Civ. P. 12(b)(6), a complaint must contain sufficient factual matter, which, if accepted as true, "state[s] a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the

defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). To meet its obligation to provide the grounds of its entitlement to relief, a plaintiff must offer "more than labels and conclusions," and a "formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. Dismissal is appropriate if the facts as alleged do not "possess enough heft to show that plaintiff is entitled to relief." *Ruiz Rivera v. Pfizer Pharm., LLC*, 521 F.3d 76, 84 (1st Cir. 2008).

In deciding this Motion to Dismiss, the Court may consider not only the allegations of the Complaint, but also the Policy (which is attached to the Complaint) and, by judicial notice, the text of the various government orders that are repeatedly referenced in the Complaint. *See Trans-Spec Truck Serv. v. Caterpillar Inc.*, 524 F.3d 315, 321 (1st Cir. 2008); *Nicholas v. Cigna Life Ins. Co. of New York*, No. 14-CV-14117-ADB, 2016 WL 755612, *4 (D. Mass. Feb. 25, 2016).

### B.     Massachusetts Principles of Insurance Policy Interpretation

"The interpretation of an insurance contract is a question of law." *Boston Gas Co. v. Century Indem. Co.*, 454 Mass. 337, 355–56 (2009).[3] Massachusetts law construes insurance policies under the general rules of contract interpretation. *See Brazas Sporting Arms, Inc. v. Am. Empire Surplus Lines Ins. Co.*, 220 F.3d 1, 4 (1st Cir. 2000). When the words of a policy language

---

[3] The substantive law of Massachusetts controls this case. When exercising diversity jurisdiction, federal courts apply the choice-of-law rules of the forum state. *Alharbi v. Theblaze, Inc.*, 199 F. Supp. 3d 334, 360 (D. Mass. 2016). Massachusetts applies a functional choice-of-law approach that is expressly guided by the Restatement (Second) of Conflict of Laws (1971) (the "Restatement"). *See Bushkin Assocs., Inc. v. Raytheon Co.*, 393 Mass. 622, 631-32 (1985). "Section 193 [of the Restatement] provides that the rights created by a contract of casualty insurance are to be determined by the local law of the State that the parties to the insurance contract understood would be the principal location of the insured risk during the term of the policy, unless some other State has a more significant relationship under the principles of § 6." *Clarendon National Insurance Company v. Arbella Mutual Insurance Company*, 60 Mass. App. Ct. 492, 496 (2004). The location of the insured risk is given greater weight than any other single contact, however, when the "primary location of the insured risk" is unclear, Massachusetts courts look to the insured's domicile. *General Electric Co. v. Lines*, 24 Mass. L. Rptr. 319, 2008 WL 2908053, *2 (Mass. Sup. Ct. July 10, 2008); *see also* Restatement § 193, cmt. b. Plaintiff is domiciled in Massachusetts, where it was founded. Massachusetts is also the principal place of Plaintiff's business and the state in which it operates 24 of the 32 restaurant premises insured by the Policy. (Compl., ¶¶5, 10). Thus, under the Restatement rule and Massachusetts precedent, the Court should apply Massachusetts law, where available, to resolve the substantive legal and coverage issues presented in this action.

are clear, a court should construe them "in their usual and ordinary sense." *Hakim v. Massachusetts Insurers' Insolvency Fund,* 424 Mass. 275 (1997). Further, a court must "read the policy as written and '[is] not free to revise it or change the order of the words.'" *Id.* at 281. "Every word in an insurance contract 'must be presumed to have been employed with a purpose and must be given meaning and effect whenever practicable,'" *Allmerica Fin. Corp. v. Certain Underwriters at Lloyd's, London,* 449 Mass. 621, 628 (2007), "without according undue emphasis to any particular part over another." *Mission Ins. Co. v. United States Fire Ins. Co.,* 401 Mass. 492, 497 (1988). Finally, Massachusetts courts acknowledge that in an insurance dispute, the insured has the initial burden to establish coverage. *Demers Bros. Trucking v. Certain Underwriters at Lloyd's, London, Subscribing to Certificate No. SRS IM MA 04-124*, 600 F. Supp. 2d 265, 272 (D. Mass. 2009). Only if the insured meets its burden does the burden shift to the insurer to show that an exclusion applies. *Id*.

## IV.  ARGUMENT

### A.  The Court Should Dismiss Counts II and IV Because the Complaint Fails To State A Plausible Claim for Entitlement to Civil Authority Coverage.

The Complaint alleges that Plaintiff's restaurants lost substantial revenue during the COVID-19 pandemic after government leaders issued orders that temporarily banned on-premises dining at restaurants and directed the public to remain at home, except to engage in essential activities like buying food from restaurants and grocery stores, purchasing medicine, going to the doctor, or exercising. (Compl., ¶¶40, 73). The Complaint admits that the Orders permit the public to patronize restaurants like Legal Sea Foods through "carry out" service, (*Id.* ¶¶40, 46), and allow restaurants to prepare and serve food and beverages at their premises and to sell it to customers, though not for on-premises consumption. (*Id.* ¶46). Yet, Plaintiff ceased operating its restaurants altogether and alleges that carry-out and delivery service were "not feasible for [Plaintiff] given

its menu, brand and business . . . ." (*Id.* ¶47). These allegations are insufficient to state a plausible claim for coverage under the Policy's Civil Authority provision and warrant the dismissal of Counts II and IV.

To be entitled to coverage for extra expenses or business income losses under the Policy's Civil Authority provision, Plaintiff must allege and prove that: (1) the loss and expense was caused by "action of civil authority that prohibits access to the described premises" (*i.e.*, the locations listed as insured by the Policy) (emphasis added); (2) the action of civil authority was preceded by "damage to property other than property at the described premises" that was caused by a Covered Cause of Loss; (3) access to the area immediately surrounding the damaged property was prohibited by civil authority as a result of the damage, and the insured premises are within that area but not more than one mile from the damaged property; and (4) that the action of civil authority was taken either in response to dangerous physical conditions caused by the property damage or the casualty that caused the damage, or to give civil authorities unimpeded access to the damaged property. (Policy, Doc. 14-1, at p. 134 of 235). The Complaint identifies no Order or action of civil authority that satisfies these requirements.

The most obvious deficiency in the Complaint is Plaintiff's failure and inability to allege that any of the Orders prohibits access to any of the 32 premises insured by the Policy. Courts addressing the phrase "prohibits access," as used in Civil Authority coverage, interpret those terms according to their plain and ordinary meaning. *See Southern Hospitality, Inc. v. Zurich American Ins.*, 393 F.3d 1137, 1140 (10th Cir. 2004). "The plain and ordinary meaning of 'prohibit' is to 'formally forbid, esp. by authority' or 'prevent.'" *Id.* (quoting Oxford American Dictionary and Language Guide 795 (1999)). The plain and ordinary meaning of "access" is "'a way of approaching or reaching or entering.'" *Id.* Together, the words "prohibit access" means exactly

that – an order of civil authority that forbids, prevents, and completely blocks people from approaching, reaching, and entering the insured premises. *See also Commstop v. Travelers Indem. Co. of Conn.*, No. 6:11-CV-01257, 2012 WL 1883461, * 9 (W.D. La. May 17, 2012) (the phrase "prohibit access" means access to insured premises is "totally and completely prevented, *i.e.*, made impossible" by action of civil authority); *Ski Shawnee, Inc. v. Commonwealth Ins. Co.*, No. 3:09-CV-02391, 2010 WL 2696782, * 4 (M.D. Pa. July 6, 2010) (to "prohibit access" means to "completely shut down access to a party's premises . . . .").

Applying this definition in Civil Authority coverage cases, courts uniformly hold that the coverage does not apply when a government order or action hinders or limits access to or use of an insured premises but does not make access impossible. *See e.g., Southern Hospitality,* 393 F.3d at 1140 (finding no Civil Authority coverage because the grounding of air traffic after 9/11 did not bar access to the plaintiff's hotel)*; Ski Shawnee*, 2010 WL 2696782, *4 (no coverage because the transportation department's closure of main route for ingress to insured's ski resort did not prevent some customers from accessing resort through alternate routes, even if it hindered or dissuaded many customers); *Abner, Herrman & Brock, Inc. v. Great N. Ins. Co.*, 308 F. Supp. 2d 331, 335-36 (S.D.N.Y. 2004) (finding no Civil Authority coverage because, even though vehicular traffic to the plaintiff's office building was restricted after 9/11, pedestrian access and access by public transportation were allowed).[4]

---

[4] The cases so holding are legion. *See, e.g., 730 Bienville Partners, Ltd. v. Assurance Co. of Am.*, 67 F. App'x 248 (5th Cir. 2003) (unpublished) ("It is undisputed that the FAA did not forbid any person to access the [insured's] hotels" after the September 11th attacks); *Commstop,* 2012 WL 1883461, *10 (no Civil Authority Coverage because the plaintiff failed to establish that access to its business premises was completely blocked, rather than merely impeded, by a construction project); *Kean, Miller, Hawthorne, D'Armond McCowan & Jarman, LLP v. Nat'l Fire Ins. Co. of Hartford*, No. CIV.A. 06-770-C, 2007 WL 2489711, *5 (M.D. La. Aug. 29, 2007) (finding no Civil Authority coverage because the governor's advisories in connection with Hurricane Katrina merely recommended residents to remain off the streets but did not prohibit access to the insured's premises); *By Dev., Inc. v. United Fire & Cas. Co*, No. CIV. 04-5116, 2006 WL 694991, *5 (D.S.D. Mar. 14, 2006), *aff'd sub nom. BY Dev., Inc. v. United Fire & Cas. Co.*, 206 F. App'x 609 (8th Cir. 2006) (finding no Civil Authority coverage because the governor's evacuation order lasted less than 72 hours and the restrictions on movement implemented afterward did not completely prohibit access

Here, the Complaint does not allege, nor could it, that any Order issued or action taken by any government official completely forbid and blocked people from accessing any of the premises described in and insured by the Policy. To the contrary, Plaintiff alleges that, while it is "no longer permitted to operate its dining rooms" due to Orders issued by various officials, those same Orders expressly permit Plaintiff to prepare and sell its food through "carry out and delivery services." (Compl. ¶¶46, 65-70).[5] The Orders cited in the Complaint – including those issued as recently as June 2020 – confirm that government officials in all venues in which Plaintiff operates its restaurants have permitted, and indeed encouraged, Plaintiff and all other restaurants to continue preparing food and welcoming customers to their restaurants for carry-out and delivery services. (*Id.*).[6] For example, in Massachusetts – where 24 of Plaintiff's 32 restaurants are located – Governor Charles Baker issued *COVID-19 Order No. 13* on March 23, 2020, declaring that "[r]estaurants, bars and other retail establishments that sell food and beverage products to the public provide COVID-19 Essential Services and . . . are therefore <u>encouraged to continue to offer</u>

---

to the insured premises); *Philadelphia Parking Auth. v. Fed. Ins. Co.*, 385 F. Supp. 2d 280, 289 (S.D.N.Y. 2005) (no coverage where the order "may have temporarily obviated the need for Plaintiff's parking services, [but] it did not prohibit access to Plaintiff's garages and therefore cannot be used to invoke coverage[.]"); *Paradies Shops, Inc. v. Hartford Fire Ins. Co.*, No. 1:03-CV-3154-JEC, 2004 WL 5704715, *7 (N.D. Ga. Dec. 15, 2004) ("The Court sees no reasonable means of construing [the] order to ground all aircraft as an order specifically forbidding access to plaintiff's premises" in airport terminal stores); *St. Paul Mercury Ins. Co. v. Magnolia Lady, Inc.,* No. 2:97-cv-153 BB, 1999 WL 33537191, *3 (N.D. Miss. Nov. 4, 1999) (civil authority coverage not triggered by bridge closure that reduced casino-hotel's business by 80% but did not completely cut off access); *Syufy Enterprises v. Home Ins. Co. of Indiana*, No. 94-0756 FMS, 1995 WL 129229, *2 (N.D. Cal. Mar. 21, 1995) ("Under the clear terms of the policy, a civil authority must *specifically* deny access to a Syufy theater."); *TMC Stores, Inc. v. Federated Mut. Ins. Co.*, No. A04-1963, 2005 WL 1331700, *4 (Minn. Ct. App. June 7, 2005) (finding no Civil Authority Coverage because "[e]ven if more difficult or less convenient access [due to construction] discouraged customers from patronizing [the] store, this was not a prohibition of access"); *54th St. Ltd. Partners, L.P. v. Fid. & Guar. Ins. Co.*, 763 N.Y.S.2d 243, 244 (N.Y. App. Div. 2003) ("…[A]lthough vehicular and pedestrian traffic in the area was diverted, access to the restaurant was not denied.").

[5] These specific factual admissions contradict other formulaic and conclusory allegations that are not to be taken as true for purposes of this Motion, including the allegation in paragraph 63 that "the orders have *operated to prohibit access* to Legal Sea Foods' insured location, among other places." (Compl., ¶63). *See Twombly*, 550 U.S. at 555.

[6] *See also* Compl., ¶¶65-70 and n. 19-24, citing to government orders permitting restaurants to continue carry-out (also referred to as "grab & go") and delivery services from beginning of pandemic in March through June 2020.

<u>food and beverages for take-out and by delivery</u> provided they follow the social distancing
protocols set forth in Department of Public Health guidance." (<u>Exhibit 1</u>, Mass. Exec. Order Mar.
23, 2020, Ex. A (emphasis added)). A government order that allows restaurants to provide carry-
out service necessarily permits access to restaurant premises by, at the very least, suppliers and
vendors who deliver foodstuffs, restaurant employees who prepare meals and manage operations,
and customers who buy the meals in the restaurant and carry them home.

Given the unambiguous wording of the Civil Authority provision, Plaintiff's concessions
in the Complaint, and the text of the various Orders Plaintiff relies on, it is clear that Plaintiff can
prove no plausible entitlement to coverage under the Policy's Civil Authority provision.  Inasmuch
as Plaintiff's causes of action are predicated on Strathmore's decision not to pay Plaintiff's claim
for Civil Authority coverage, they fail as a matter of law and should be dismissed.[7]

### B.      The Court Should Dismiss Counts I and IV Because Plaintiff Fails To Allege the Existence of "Direct Physical Loss Of Or Damage To" Property At the Described Premises, An Essential Element of Business Income and Extra Expense Coverage.

The focal point of the Complaint is Plaintiff's claim for Civil Authority coverage, and as
shown above, the Orders do not prohibit access to any insured premises. However, in Counts I and
IV, Plaintiff also claims it is entitled to payment under the Policy's Business Income and Extra

---

[7] Plaintiff's claim fails for the additional reason that Civil Authority coverage also turns on the presence of physical damage to property at premises *other than* Plaintiff's restaurant premises, and the Orders do not indicate that they were issued because of property damage that had already occurred. *See Dickie Brennan & Co. v. Lexington Ins. Co.*, 636 F.3d 683, 687 (5th Cir. 2011) (interpreting a similar policy to "require[] proof of a *causal link* between prior damage and civil authority action."); *Kelaher, Connell & Conner, P.C. v. Auto-Owners Ins. Co.*, No. 4:19-CV-00693-SAL, 2020 WL 886120, *7 (D.S.C. Feb. 24, 2020) ("[W]ithout a nexus between the issuance of the civil authority order and the damage to an adjacent property, there is no coverage."). Nor can Plaintiff remedy this defect in an amendment. As the Orders do not refer to any "damage to property" away from insured premises, *ipso facto,* they do not permit any determination of (1) what the "damage to property" is; and, thus, (2), where it occurred; and, thus, (3), whether there was a prohibition of "access to the area immediately surrounding the damaged property;" and, thus, (4), whether the insured's premises are "not more than one mile from the damaged property." Since it is impossible to plead entitlement to Civil Authority coverage without alleging "damage to property" other than at the described premises and the other elements of the claim that stem from that damage, the Complaint fails as a matter of law.

Expense coverages. Plaintiff's failure and inability to plead facts sufficient to show "direct physical loss of or damage to" property at any of its 32 insured locations that caused a suspension of its operations is fatal to that claim and warrants dismissal of Counts I and IV.[8]

As noted above, the existence of "direct physical loss of or damage to property" at premises described in the Policy is an essential element of both the Business Income and Extra Expense coverages. (Policy, Doc. 14-1, at p. 133 of 235). Courts interpreting the phrase "direct physical loss or damage" under Massachusetts law have explained that the term "physical" must be given its plain meaning, which is "material" and "tangible." *See Crestview Country Club, Inc. v. St. Paul Guardian Ins. Co.*, 321 F. Supp.2d 260, 264 (D. Mass. 2004) (citing *American Heritage Dictionary* (Second College Edition 1982)); *see also Eveden, Inc. v. N. Assur. Co. of Am.*, No. CIV.A. 10-10061-GAO, 2014 WL 952643, *5 (D. Mass. Mar. 12, 2014) ("Intangible losses, such as a defect in title or a legal interest in property, are generally not regarded as 'physical' losses in the absence of actually physical damage to the property."); *HRG Dev. Corp. v. Graphic Arts Mut. Ins. Co.,* 26 Mass. App. Ct. 374, 377 (1988) ("Nor do we think the salient phrase ('physical loss or damage') fairly can be construed to mean physical loss in the absence of *physical* damage."). These authorities are in harmony with precedent from other jurisdictions,[9] as well as a leading insurance treatise, which states:

---

[8] The Complaint does not plead entitlement to coverage under the Policy's $50,000 coverage extension for Dependent Properties. However, Strathmore notes a possible reference to this coverage in the vague allegation that "COVID-19 has caused and continues to cause direct physical loss of or damage to Legal Sea Foods' property *and the property of those upon whom Legal Sea Foods relies*." (Compl. ¶117 (emphasis added)). This stray assertion is insufficient to support a claim for Dependent Properties coverage. Only certain properties operated by others qualify as a Dependent Property (Policy, Doc. 14-1, at pp. 131-32), and the Complaint fails to identify any such dependent property. Nor does the Complaint describe any alleged damage to a dependent property or to the nature of Plaintiff's relationship, if any, to the owner of the dependent property. Thus, any such claim would be deficient as a matter of law.

[9] *See, e.g., Trinity Indus., Inc. v. Ins. Co. of N. Am.*, 916 F.2d 267, 270-71 (5th Cir. 1990) (observing that "[t]he language 'physical loss or damage' strongly implies that there was an initial satisfactory state that was changed by some external event into an unsatisfactory state – for example, the car was undamaged before the collision dented the bumper."); *MRI Healthcare Ctr. of Glendale, Inc. v. State Farm Gen. Ins. Co.*, 187 Cal. App. 4th 766, 779 (Ct. App.

> The requirement that the loss be 'physical,' given the ordinary definition of that term, is widely held to exclude losses that are intangible or incorporeal, and, thereby to preclude any claim against the property insurer when the insured merely suffers a detrimental economic impact unaccompanied by a distinct, demonstrable, physical alteration of the property.

10A *Couch On Insurance* § 148.46. (3d ed. 2019).

To state a plausible claim for entitlement to Business Income and Extra Expense coverage in this case, Plaintiff was required to allege the existence of "direct physical loss or damage" to property at each of its restaurants, not with mere labels and conclusions, but with well pleaded facts that "possess enough heft" to indicate a material, tangible, and physical alteration of the property. *See Clark v. Boscher*, 514 F. 3d 107, 112 (1st Cir. 2008) (quoting *Twombly*, 550 U.S. at 555). The Complaint fails that test. More than 30 paragraphs of the Complaint present allegations about Coronavirus, studies about how it spreads, its health risks, its effects on American society and business, and how governments and other organizations have attempted to curb its spread. Included in those paragraphs are allegations describing how Coronavirus can contaminate surfaces and objects within buildings. (Compl., ¶¶25-39). *Yet, the Complaint does not allege that Coronavirus was present in any Legal Sea Foods restaurants or on any of its property.* Indeed, Plaintiff studiously avoids even the *suggestion* that its restaurants were contaminated with Coronavirus, offering instead the conclusory and formulaic allegation that "Legal Sea Foods has suffered direct physical loss of or damage to its property caused by COVID-19," the disease caused

---

2d Dist. 2010) ("[t]hat the loss needs to be 'physical,' given the ordinary meaning of the term, is 'widely held to exclude alleged losses that are intangible or incorporeal, and, thereby, to preclude any claim against the property insurer when the insured merely suffers a detrimental economic impact unaccompanied by a distinct, demonstrable, physical alteration of the property.'"); *Aflac, Inc. v. Chubb & Sons, Inc.*, 260 Ga. App. 306, 319 (Ga. App. 2003) (observing that the common meaning of the words "direct physical loss" contemplates "an actual change in insured property then in a satisfactory state, occasioned by accident or other fortuitous event directly upon the property causing it to become unsatisfactory for future use or requiring that repairs be made to make it so").

by Coronavirus, and the "resulting government orders." (*Id.* ¶¶48, 73).[10] While Strathmore maintains that the mere presence of a virus on a surface or object does not constitute "direct physical loss of or damage to property," the Court need not address that issue in deciding this Motion. As the Complaint plainly shows, Plaintiff makes no claim that Coronavirus was found in any of its restaurants. The Court can and should dismiss the Complaint because it simply does not allege that anything happened that harmed Plaintiff's property.

Unable to plead any form of physical loss or damage to its property, Plaintiff pivots to the allegation that "Legal Sea Foods' inability to use its insured premises to operate its business due to COVID-19 is sufficient to trigger business income and related coverages." (Compl*.*, ¶99). In other words, Plaintiff contends that its mere "loss of use" of the dining areas of its restaurants due to government restrictions is a form of "physical loss or damage" that entitles it to coverage. (*Id.* ¶¶98-99). The theory that a mere loss of use of property, unaccompanied by some distinct form of property damage, constitutes "direct physical loss" has been rejected by a number of courts.[11] For example, in *Roundabout Theatre Co. v. Cont'l Cas. Co.*, 751 N.Y.S.2d 4 (N.Y. App. Div. 2002),

---

[10] Paragraph 73 of the Complaint is equally deficient, alleging only that "COVID-19 and the resulting government orders have caused and continue to cause Legal Sea Foods physical loss of or damage to property and business income losses," but providing absolutely no *factual* material that would allow Strathmore or the Court to know the nature of the loss or damage or how it occurred.

[11] *See, e.g., Pentair, Inc. v. American Guar. and Liab. Ins. Co.*, 400 F.3d 613, 617 (8th Cir. 2005) (rejecting argument that "mere loss of use or function of property constitutes 'direct physical loss or damage'" without demonstrable physical damage); *Newman Myers Kreines Gross Harris, P.C. v. Great N. Ins. Co.*, 17 F. Supp. 3d 323, 331 (S.D.N.Y. 2014) ("The words 'direct' and 'physical,' which modify the phrase 'loss or damage,' ordinarily connote actual, demonstrable harm of some form to the premises itself, rather than forced closure of the premises for reasons exogenous to the premises themselves, or the adverse business consequences that flow from such closure."); *Northeast Georgia Heart Ctr., P.C. v. Phoenix Ins. Co.*, No. 2:12-CV-00245-WCO, 2014 WL 12480022, *6 (N.D. Ga. May 23, 2014) ("The court will not expand 'direct physical loss' to include loss-of-use damages when the property has not been physically impacted in some way. To do so would be equivalent to erasing the words 'direct' and 'physical' from the policy."); *J. O. Emmeric & Assocs., Inc. v. State Auto Ins. Cos.*, No. 3:06CV00722-DPJ-JCS, 2007 WL 9775576, *5 (S.D. Miss. Nov. 19, 2007) (where insured was denied access to computer data during power outage, this was not "direct physical loss of or damage to" property); *Herr v. Forghani*, 161 Wash. App. 1037, 2011 WL 1833829, *7 (2011) (unpublished) (explaining that insured "must show direct physical loss to tangible property," and "alleged loss of use of his property caused by the supposed increased easement use" was not covered); *Harry's Cadillac-Pontiac-GMC Truck Co.*, 486 S.E.2d 249, 251 (N.C. App. 1997) (finding no "physical loss" sufficient to trigger business interruption coverage where customers could not access car dealership due to heavy snowstorm).

a Broadway theatre was forced to cancel numerous performances of a musical when the City closed off the block on which it was located after scaffolding attached to a nearby building collapsed. *Id.* at 5. After its insurance claim was denied, the theatre owner sued its property insurer to recover for its business interruption losses. *Id.* Reversing the trial court's entry of summary judgment for the insured, the appellate court held that "the plain meaning of the words 'direct' and 'physical' narrow the scope of coverage and mandate the conclusion that losses resulting from off-site property damage do not constitute covered perils under the policy . . . ." *Id.* at 8 (citations omitted).

Plaintiff's allegation that government regulation of on-premises dining is equivalent to "physical loss or damage" also contradicts, and indeed would nullify, the definition of "period of restoration" incorporated into both the Business Income and Extra Expense coverages. (Policy, Doc. 14-1, p. 133 of 235). The Policy provides that the "period of restoration" ends on the earlier of: (1) "The date when the property at the described premises should be repaired, rebuilt or replaced with reasonable speed and similar quality;" or (2) "The date when business is resumed at a new permanent location." (*Id.* at 141 of 235). Thus, the Policy plainly contemplates that Business Income and Extra Expense coverages apply only during the period of time when a *physical* change in the condition of insured property exists that can be remedied through repair, restoration, or replacement. *See Newman Myers Kreines Gross Harris,* 17 F. Supp. 3d at 332 ("The words 'repair' and 'replace' [in the policy's definition of 'period of restoration'] contemplate physical damage to the insured premises as opposed to loss of use of it."); *Philadelphia Parking Auth. v. Fed. Ins. Co.*, 385 F. Supp. 2d 280, 287 (S.D.N.Y. 2005) ("'Rebuild,' 'repair' and 'replace' all strongly suggest that the damage contemplated by the Policy is physical in nature."); *Harry's Cadillac*, 486 S.E.2d 249, 251 (N.C. App. 1997) (reaching same conclusion); *Roundabout Theatre*, 751 N.Y.S.2d at 8 (same).

The alleged "loss of use" of Plaintiff's restaurant dining areas due to a government order, like the inability to use law firm office space in *Newman Myers* or the theatre in *Roundabout Theatre*, is intangible and incorporeal and cannot be repaired, rebuilt, or replaced. Thus, Plaintiff's interpretation of the Policy would mean that the "period of restoration" would have no end. "Massachusetts law disfavors 'contract interpretations that make some provision of the contract 'useless or inexplicable'" or lead to an absurd outcome. *Demers Bros. Trucking, Inc.*, 600 F. Supp. 2d at 278.

In light of these principles, it is hardly surprising that no court applying Massachusetts law has ever held that the mere "inability to use" property constitutes "physical loss or damage" under a property insurance policy absent some physical or material alteration of the property. Several decades ago, two justices of the Massachusetts Superior Court ruled, in unreported decisions, that "direct physical loss" may exist in the absence of "structural damage" to a building if its habitability is impaired. *See Matzner v. Seaco Ins. Co.*, No. CIV. A. 96-0498-B, 1998 WL 566658 *4 (Mass. Super. Aug. 12, 1998); *Arbeiter v. Cambridge Mut. Fire Ins. Co.,* 1996 WL 1250616, *1 (Mass. Super. Mar. 15, 1996). However, neither case supports Plaintiff's position on loss of use in this case. Aside from lacking any precedential value, *Matzner* and *Arbeiter* are wholly inapposite.[12] Unlike *Matzner*, where carbon monoxide permeated the insured's home, and *Arbeiter*, where pervasive and noxious fumes from an oil spill affected the interior of the premises,

---

[12] At least one federal court has questioned whether *Matzner* is "good law." In *Philadelphia Parking Auth.*, the district court noted that *Matzner* "may be bad law as it does not refer to or acknowledge a Massachusetts Court of Appeals case that held that 'in the absence of physical damage' there is no coverage under the phrase 'physical loss or damage.'" 385 F. Supp. 2d at 289 (citing *HRG Dev. Corp.*, 26 Mass. App. Ct. 374) ("Nor do we think the salient phrase ('physical loss or damage') fairly can be construed to mean physical loss in the absence of *physical* damage.")). *Matzner* and *Arbeiter* were also cited by the First Circuit Court of Appeals in *Essex Ins. Co. v. BloomSouth Flooring Corp.*, 562 F.3d 399 (1st Cir. 2009). *BloomSouth* involved an insured's claim for defense and indemnity under a commercial general liability insurance policy, in connection with a foul odor emanating from a carpet. *Id.* at 401. The court held that the odor constituted "physical injury to tangible property." *Id.* at 406-06. *BloomSouth* is inapplicable here, for the same reasons as *Matzner* and *Arbeiter*, *infra*, as well as the additional reason that it involved different policy language and a different policy type (*i.e.*, liability).

Plaintiff does not allege that any injurious element was present in its restaurants, or that anything actually happened to any property within them.[13] Rather, the well pleaded facts of the Complaint suggest only that Plaintiff was unable to use the dining areas of its restaurants because of government orders that limited restaurants to carry-out and delivery sales.

Finally, Plaintiff's interpretation defies the Policy's exclusion of loss attributable to the "loss of use" of insured property.  (Policy, Doc. 14-1, p. 223 of 235) ("We will not pay for loss or damage caused by or resulting from…b. Delay, loss of use or loss of market.") (emphasis added)). This exclusion is unambiguous, *see App v. Zurich Assur. Co. of Am.*, No. CIV.A. 08-8717, 2008 WL 4399385, *6 (E.D. La. Sept. 23, 2008), and Massachusetts law mandates that the phrase "direct physical loss or damage" in the Business Income and Extra Expense coverages must be interpreted in a way that gives the exclusion effect and meaning. *Mission Ins. Co.*, 401 Mass. at 497 ("…[I]nsurance policies should be construed as whole 'without according undue emphasis to any particular part over another." (citations omitted)). Construing the phrase "direct physical loss or damage" to encompass a loss of use unaccompanied by a physical alteration of insured property would negate the "loss of use" exclusion altogether.

### C.    Plaintiff's Failure to Plead a Plausible Claim for Coverage Under the Policy Also Warrants Dismissal of Its Purported Chapter 93A Claim.

Massachusetts General Laws, Chapter 93A, Section 2, prohibits those engaged in trade or commerce from employing "unfair methods of competition and unfair or deceptive acts or practices." M.G.L. c. 93A, § 2. In Count III of the Complaint, Plaintiff purports to assert a claim under Section 11 of the statute based upon Strathmore's alleged "wrongful denial and inadequate

---

[13] Though Plaintiff does not allege that Coronavirus was present on any surface at an insured premises, Strathmore disputes that the presence of virus on surfaces or objects in a building would render the building uninhabitable.

investigation" of Plaintiff's insurance claim. (Compl., ¶112). Count III fails to state a plausible claim for relief under Chapter 93A and should be dismissed.

Liability arises under Chapter 93A when a company has engaged in immoral, unethical, oppressive, or unscrupulous conduct and violated an established conception of unfairness. *See Peabody Essex Museum, Inc. v. U.S. Fire Ins. Co.*, 802 F.3d 39, 54 (1st Cir. 2015); *Ora Catering, Inc. v. Northland Ins. Co.*, No. CIV.A. 14-12618-NMG, 2014 WL 5776158, *3 (D. Mass. Nov. 5, 2014). To allege a claim under Section 11, a plaintiff must allege misconduct rising to the level of an "extreme or egregious" business wrong, "commercial extortion," or similar level of "rascality" that raises "an eyebrow of someone inured to the rough and tumble of the world of commerce." *Id.* By contrast, "a good faith dispute as to whether money is owed, or performance of some kind is due, is not the stuff of which a c. 93A claim is made." *Duclersaint v. Fed. Nat. Mortgage Ass'n*, 427 Mass. 809, 814 (1998).

As demonstrated above, the Complaint fails to plead facts supporting a plausible claim to coverage under the Policy. Plaintiff's inability to allege facts supporting its conclusion that Strathmore had a contractual duty to pay Plaintiff for the financial loss it sustained when it decided to shut down its restaurants warrants dismissal of its Chapter 93A claim. *See Transamerica Ins. Co. v. KMS Patriots, L.P.*, 52 Mass. App. Ct. 189, 197 (2001) ("When coverage has been correctly denied, as in this case, no violation of the Massachusetts statutes proscribing unfair or deceptive trade practices may be found.").

But even assuming, *arguendo*, that any part of Plaintiff's contract or declaratory judgment claims were to survive this Motion to Dismiss, the dismissal of Count III is still warranted under Massachusetts law. When taken in the light most favorable to Plaintiff, the allegations of the Complaint describe a good faith disagreement over the interpretation and application of the Policy

to a business interruption claim, which does not support liability under Chapter 93A. *See Ora Catering,* 57 F. Supp. 3d at 110-11 (explaining that the court "need not determine which party has the correct contract interpretation," because "[e]ven if defendant's interpretation of the policy was found to be incorrect, it would not result in a violation of Chapter 93A so long as a defendant made a good faith determination to deny coverage."); *Boston Symphony Orchestra, Inc. v. Commercial Union Ins. Co.*, 406 Mass. 7, 15 (1989) (no violation of Chapter 93A because "[i]n good faith, [the insurer] relied upon a plausible, although ultimately incorrect, interpretation of its policy. There is nothing immoral, unethical or oppressive in such an action."); *Chiulli v. Liberty Mut. Ins., Inc.*, 97 Mass. App. Ct. 248 (2020) ("Liability is not 'reasonably clear' if there is 'a legitimate difference of opinion as to the extent of [the insured's] liability,' or a 'good faith disagreement' over the amount of damages." (quoting *Bobick v. United States Fid. & Guar. Co.*, 439 Mass. 652, 660 (2003))); *Guity v. Commerce Ins. Co.*, 36 Mass. App. Ct. 339, 343 (1994) ("A plausible, reasoned legal position that may ultimately turn out to be mistaken – or simply, as here, unsuccessful – is outside the scope of the punitive aspects of the combined application of c. 93A and c. 176D."); *Wasserman v. Commerce Ins. Co.*, 15 Mass. L. Rep. 170, 2002 WL 31187681, *9 (Mass. Super. 2002) ("A good faith disagreement between an insurer and its insured will not support a finding of liability under either 93A or 176D. Neither will liability exist if the insurer in good faith relied on a plausible, but ultimately wrong interpretation of its own policy.").

## V.    CONCLUSION

For the foregoing reasons, the allegations of the Complaint reveal that Plaintiff cannot allege facts that would allow the Court to draw a reasonable inference that Plaintiff is plausibly entitled to a declaratory judgment, damages for breach of the insurance contract, or relief under Mass. Gen. L. c. 93A, §11. Accordingly, the Court should dismiss this action with prejudice pursuant to Fed. R. Civ. P. 12(b)(6).

Respectfully submitted,

DEFENDANT STRATHMORE INSURANCE
COMPANY,

By its attorneys,


 /s/ *Jonathan E. Small*
Gregory P. Varga (BBO #629227)
Jonathan E. Small (BBO #672480)
ROBINSON & COLE LLP
280 Trumbull Street
Hartford, CT 06103
Tel: (860) 275-8200
E-mail: gvarga@rc.com
E-mail: jsmall@rc.com

Julianna M. Charpentier (BBO #703286)
ROBINSON & COLE LLP
One Boston Place, 25th Floor
Boston, MA  02108
Tel: (617) 557-5900
E-mail: jcharpentier@rc.com

Dated: June 19, 2020


## CERTIFICATE OF SERVICE

I, Jonathan E. Small, hereby certify that a copy of the foregoing document, filed through the ECF system, will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those, if any, indicated as non-registered participants on this 19th day of June, 2020.

/s/ *Jonathan E. Small*
Jonathan E. Small