# EXHIBIT 1

## **INDEX**

## **DISTRICT OF COLUMBIA ORDERS**

| **Order** | **Page** |
|---|---|
| Mayor's Order 2020-048, March 16, 2020 | 3 |
| Mayor's Order 2020-063, April 15, 2020 | 6 |
| Mayor's Order 2020-066, May 13, 2020 | 15 |

**GOVERNMENT OF THE DISTRICT OF COLUMBIA**

**ADMINISTRATIVE ISSUANCE SYSTEM**

Mayor's Order 2020-048
March 16, 2020

**SUBJECT:**   Prohibition on Mass Gatherings During Public Health Emergency - Coronavirus (COVID-19)

**ORIGINATING AGENCY:**     Office of the Mayor

By virtue of the authority vested in the Mayor of the District of Columbia pursuant to section 422(11) of the District of Columbia Home Rule Act, approved December 24, 1973, 87 Stat. 790, Pub. L. No. 93-198, D.C. Official Code § 1-204.22(11) (2016 Repl.); section 5 of the District of Columbia Public Emergency Act of 1980, effective March 5, 1981, D.C. Law 3-149, D.C. Official Code § 7-2304 (2018 Repl.); section 5a of the District of Columbia Public Emergency Act of 1980, effective October 17, 2002, D.C. Law 3-149, D.C. Official Code § 7-2304.01 (2018 Repl.); section 1 of An Act To authorize the Commissioners of the District of Columbia to make regulations to prevent and control the spread of communicable and preventable diseases, approved August 11, 1939, 53 Stat. 1408, D.C. Official Code § 7-131 *et seq;* (2012 Repl.); the Department of Consumer and Regulatory Affairs Civil Infractions Act of 1985, effective October 5, 1985, D.C. Law 6-42, D.C. Official Code § 2-1801.01 *et seq.*, section 6(c) of An Act To prescribe administrative procedures for the District of Columbia government, approved October 21, 1968, 82 Stat. 1203, D.C. Official Code § 2-505(c); D.C. Official Code 25-211(c) (2018 Supp.); D.C. Official Code § 47-2844 (2018 Supp.); Mayor's Order 2020-045, dated March 11, 2020; and Mayor's Order 2020-046, dated March 11, 2020, it is hereby **ORDERED** that:

## I.   EMERGENCY MEASURES AND REQUIREMENTS

A. It is essential that the spread of COVID-19 be slowed to protect the ability of public and private health care providers to handle the influx of new patients and to safeguard public health, safety, and welfare of the persons living or otherwise present in the District of Columbia.

B. In accordance with guidance from the Centers for Disease Control and Prevention (CDC), mass gatherings of more than fifty (50) persons are prohibited anywhere in the District of Columbia.

   a. A "Mass Gathering" is any event or convening, subject to the exceptions and clarifications set forth below, that brings together or is likely to bring together fifty (50) or more persons at the same time in a single room or other single confined or enclosed space, such as, by way of example and without limitation, an auditorium, theatre, stadium (indoor or outdoor), arena or event center, meeting hall, conference center, large cafeteria, or any other confined indoor or confined

outdoor space.

b. A "Mass Gathering" includes any event in confined outdoor spaces, which means an outdoor space that (i) is enclosed by a fence, physical barrier, or other structure and (ii) where people are present and they are within arm's length of one another for extended periods.

c. A "Mass Gathering" does not include the following:

    i. Gatherings of people in multiple, separate enclosed spaces in a single building, so long as fifty (50) people are not present in any single space as the same time;

    ii. The use of enclosed spaces where fifty (50) or more people may be present at different times during the day, so long as fifty (50) or more people are not present in the space at the same time; and,

    iii. Gatherings on property within the District of Columbia owned by the federal government.

d. A "Mass Gathering" does not include the following:

    i. Public or private schools, including child care facilities, so long as children are in classrooms, not auditoriums or gymnasiums where more than fifty (50) children are present at one time;

    ii. Spaces where fifty (50) or more persons may be in transit or waiting for transit such as bus, ferry, sluglines, or subway stations or terminals (or shopping areas associated with the buildings housing those stations or terminals);

    iii. Office space, hotels, or residential buildings;

    iv. Grocery stores, shopping malls, or other retail establishments where large numbers of people are present but it is unusual for them to be within arm's length of one another for an extended period; and,

    v. Hospitals, nursing homes, assisted living facilities, and other medical facilities.

e. Gatherings of more than ten (10) people organized by an organization not listed in subsection I.B.d.v. that primarily serves, or targets, persons of sixty (60) or more years of age, persons who have serious medical conditions (including heart disease, diabetes, lung disease, asthma, and chronic obstructive pulmonary disease), or persons who are immunocompromised, are prohibited in the District of Columbia.

C. Restaurants and Taverns licensed in the District of Columbia shall suspend table seating effective March 16, 2020, at 10:00 PM until April 1, 2020, at 6:00 AM.

D. Restaurants and Taverns may operate delivery and grab-and-go operations only, beginning on March 16, 2020, at 10:00 PM.

E. In order to comply with the Department of Health's Notice of Emergency Rulemaking, adopted March 13, 2020 to prohibit mass gatherings and this Order, venues doing business as nightclubs, multi-purpose facilities, health clubs, health spas, massage establishments, and theatres in the District of Columbia must suspend operations beginning on March 17, 2020.

## II.    ENFORCEMENT

Any business or institution that in knowing violation of this emergency Order shall be subject to all civil, criminal and administrative penalties authorized by law, including sanctions or penalties for violating D.C. Official Code § 7-2307, and D.C. Official Code § 47-2844(a) including summary suspension of licensure.

## III.   DURATION OF ORDER

This Order shall remain in effect until March 31, 2020, and may be extended during a declaration of a public emergency.

## IV.    EFFECTIVE DATE: This Order shall become effective immediately.

**MURIEL BOWSER**
**MAYOR**

ATTEST: _____
**KIMBERLY A. BASSETT**
**SECRETARY OF STATE OF THE DISTRICT OF COLUMBIA**

**GOVERNMENT OF THE DISTRICT OF COLUMBIA**

**ADMINISTRATIVE ISSUANCE SYSTEM**

Mayor's Order 2020-063
April 15, 2020

**SUBJECT**:    Extensions of Public Emergency and Public Health Emergency and Measures to Protect Vulnerable Populations During the COVID-19 Public Health Emergency

**ORIGINATING AGENCY**:        Office of the Mayor

By virtue of the authority vested in me as Mayor of the District of Columbia pursuant to section 422 of the District of Columbia Home Rule Act, approved December 24, 1973, Pub. L. 93-198, 87 Stat. 790, D.C. Official Code § 1-204.22 (2016 Repl.); in accordance with the COVID-19 Response Emergency Amendment Act of 2020, effective March 17, 2020, D.C. Act 23-247, the COVID-19 Response Supplemental Emergency Amendment Act of 2020, effective April 7, 2020, D.C. Act 23-286, and any substantially similar subsequent emergency or temporary legislation; section 5 of the District of Columbia Public Emergency Act of 1980, effective March 5, 1981, D.C. Law 3-149, D.C. Official Code § 7-2304 (2018 Repl.); section 5a of the District of Columbia Public Emergency Act of 1980, effective October 17, 2002, D.C. Law 14-194, D.C. Official Code § 7-2304.01 (2018 Repl.); section 1 of An Act To Authorize the Commissioners of the District of Columbia to make regulations to prevent and control the spread of communicable and preventable diseases, approved August 11, 1939, 53 Stat. 1408, D.C. Official Code §§ 7-131 *et seq.* (2012 Repl.); the Developmental Disabilities Service Management Reform Amendment Act of 2006, effective March 14 2007, D.C. Law 16-264, D.C. Official Code §§ 7-761.01 *et seq.*; the Homeless Services Reform Act of 2005, effective October 22, 2005, D.C. Law 16-35, D.C. Code §§ 4-751.01 *et seq.*; the Continuing Care Retirement Communities Act of 2004, effective April 5, 2005, D.C. Law 15-270, D.C. Code § 44-151.01 *et seq.*; the Assisted Living Residence Regulatory Act of 2000, effective June 24, 2000, D.C. Law 13-127, D.C. Official Code §§ 44-101.01 *et seq.*; the District of Columbia Substance Abuse Treatment and Prevention Act of 1989, effective March 15, 1990, D.C. Law 8-80, D.C. Official Code §§ 44-1201 *et seq.*; the Youth Residential Facilities Licensure Act of 1986, effective August 13, 1986, D.C. Law 6-139, D.C. Code §§ 7-2101 *et seq.*; the Health-Care and Community Residence Facility Hospice and Home Care Licensure Act of 1983, effective February 24, 1984, D.C. Law 5-48, D.C. Official Code § 44-501 *et seq.*; section 2 of An Act To Create a Department of Corrections in the District of Columbia, approved, June 27, 1946, 60 Stat. 320, D.C. Official Code §§ 24-211.01–211.08; Mayor's Order 2020-045, dated March 11, 2020, Mayor's Order 2020-046, dated March 11, 2020, Mayor's Order 2020-050, dated March 20, 2020, Mayor's Order 2020-051, dated March 20, 2020, Mayor's Order 2020-053, dated March 24, 2020, and Mayor's Order 2020-054, dated March 30, 2020, it is hereby **ORDERED** that:

## I.    BACKGROUND

1.    This Mayor's Order incorporates the findings of prior Mayor's Orders relating to COVID-19.

2.    Individuals living, working, and visiting Washington, DC must continue to stay at their place of residence, only leaving for essential activities, essential government functions, essential business, essential travel or allowable recreation.

3.    If leaving their residence, all individuals must continue to social distance from others not in their household. Wearing a mask or mouth covering is one tool to protect their own health and the health of others, but it does not replace social distancing.

4.    Group facilities and residences pose the threat of rapid rates of transmission of COVID-19 and the government and private sector providers of shelter and health care have a special concern for reducing transmission of COVID-19.

5.    This Order mandates protocols that must be implemented at certain facilities and residences in the District where this threat exists and where vulnerable populations reside, while leaving room for evolving standards of care.

6.    This Order further extends the public emergency and public health emergency in the District of Columbia through May 15, 2020.

## II.    APPLICABILITY

Sections II through VIII of this Order apply to:

1.    Community living residences and facilities for individuals with medical, physical, or other health care conditions that are funded in whole or in part by the District government, including:

    a.    Community residential facilities or other community-based residences for people who are elderly or with physical conditions or intellectual disabilities;

    b.    Congregate care facilities licensed by the District government;

    c.    Intermediate care facilities for individuals with intellectual disabilities;

    d.    Hospice facilities; and

    e.    Substance use disorder residential facilities;

2.    Nursing homes and assisted living facilities regulated by the District;

3.      Low-barrier and emergency shelters for individuals, families, and youth
        experiencing homelessness or fleeing domestic violence;

4.      The Department of Corrections' Correctional Treatment Facility, Central Cell
        Block, and Central Detention Facility;

5.      The Department of Youth Rehabilitation Services' New Beginnings Youth
        Development Center and Youth Services Center; and

6.      Psychiatric hospitals, including St. Elizabeths Hospital and the Psychiatric
        Institute of Washington.

## III.    **DESIGNATION OF INDIVIDUALS PROVIDING DIRECT SUPPORT WITHIN RESIDENCES AND FACILITIES AS HEALTH CARE PROVIDERS**

This Order hereby determines that individuals who provide direct support services within the residences and facilities identified in section II, with the exception of District of Columbia government employees, are considered to be essential health care providers necessary for the District's response to the COVID-19 public health emergency.

## IV.    **OUTREACH TO CERTAIN VULNERABLE POPULATIONS**

The Department of Health Care Finance (DHCF) shall review its claims data from calendar years 2019 and 2020 to identify beneficiaries who may have an underlying health condition that makes them more vulnerable to severe illness or death from COVID-19.  DHCF shall conduct outreach to those individuals to provide them information on steps they may take to lessen the risk of contracting and spreading COVID-19, to determine whether the individual has symptoms of COVID-19, and to provide information on any medical care, case management, or other support that may be appropriate for the individual to address the risks or impacts of COVID-19.

## V.     **PROTOCOLS REQUIRED AT ALL RESIDENCES AND FACILITIES COVERED BY THIS ORDER**

1.      Residences and facilities specified in section II must implement the following
        protocols for the safety of employees and individuals residing at the facilities:

        a.      Exclude all Visitors and Non-Essential Personnel (as defined in section
                VII) from entry or access to their facility or residence;

        b.      Screen all individuals, including all employees and essential visitors, to
                prohibit the entrance of anyone showing symptoms of infection with
                COVID-19. The screening shall include:

      i.      A questionnaire on whether the individual is currently exhibiting, or has recently exhibited any COVID-19 or flu-like symptoms or been in contact with a person recently diagnosed with COVID-19; and

      ii.     A body temperature check.

      Emergency personnel are exempt from a screening;

c.      Exclude from the facility or residence each employee or essential visitor who has a fever or who exhibits symptoms of COVID-19;

d.      Screen all individuals who share a common area such as a ward, unit, floor or restroom facilities, with an individual who tested positive for COVID-19 in the facility. The screening shall include:

      i.      A questionnaire regarding COVID-19 symptoms;

      ii.     A temperature check; and

      iii.    A test for COVID-19 as soon as practicable.

      No universal testing shall be conducted for research purposes, but shall be undertaken only for the care of individuals and prevention of the spread of COVID-19;

e.      Require each person entering the facility or residence to wash their hands with soap and water for at least twenty (20) seconds or disinfect their hands with an approved hand sanitizer;

f.      Cancel all group activities at the facility or residence, except for group activities required to address a medical need;

g.      Encourage employees and residents to practice social distancing, including not shaking hands or engaging in any other unnecessary physical contact;

h.      Provide adequate sanitizing products, including hand sanitizers or disinfecting wipes, at all entry and exit ways and throughout the residence or facility;

i.      Restrict all seating in communal dining areas and allow individuals to pick up "grab and go" prepackaged meals or provide in-room dining services. If not feasible, appropriate social distancing practices must be followed, such as staggering meal times or spacing individuals at least six (6) feet apart;

j.    Encourage and facilitate the use of electronic communication platforms for videoconference or telephone visits with residents, consistent with normal visitation policies and consistent with public safety. If an in-person visit is required, the visit must take place in compliance with the facility's policies. Facilities are encouraged to provide private, secure video or telephonic communication platforms for lawyers and legal guardians;

k.    Implement regular disinfection procedures for cleaning high-touch surfaces and any shared equipment; and

l.    Require individuals who have left the facility or residence for care at a hospital for COVID-19 or for any other approved reason to be allowed to return to the facility or residence.

2.    Residences and facilities specified in section II of this Order must implement the following protocols for the safety of their workforce and residents:

a.    Inform all employees in writing that they should not come to work if sick and of applicable paid leave provisions;

b.    Inform all employees in writing of social distancing protocols;

c.    If feasible, separate all employee workstations by at least six (6) feet or stagger employee shift times or duties to maintain social distance;

d.    Require all employees providing direct care to individuals or directly involved in food preparation to wear a mask or face covering.

     i.    Facilities and residences should request masks, if the facility or residence is not able to procure such items on its own, from the Local Strategic Medical Supply; and

     ii.   The Emergency Operations Center shall respond to these requests as soon as practicable if supplies are adequate;

e.    Ensure that all employees have consistent access to running water and soap; tissues and lined trash receptacles; store-bought alcohol-based hand sanitizer that contains at least sixty percent (60%) alcohol if permitted in the facility; and disinfectant spray or wipes;

f.    Implement the following practices to mitigate the risk of transmission within facilities and residences:

     i.    Any employee witnessing an individual exhibiting symptoms of COVID-19 shall notify the person in charge;

ii.     Direct individuals exhibiting symptoms of COVID-19 to medical care or secure such care and determine or direct the individual to determine whether testing is available for COVID-19;

iii.    Inform the appropriate District government agency(ies) regulating and overseeing the delivery of services at the facility or residence, or the District government agency with which the facility or residence contracts, when a staff member or resident has tested positive for COVID-19;

iv.     When notified that an individual has tested positive for COVID-19 with written verification of the positive test result, implement a protocol, in accordance with guidance from the Department of Health, requiring affected employees and individuals to self-quarantine and for sanitization of affected areas of the facility; and

v.      Require employees who have had confirmed COVID-19 positive test results to present to their supervisor written documentation from a healthcare professional stating that they are approved to return to work before returning to work;

g.      Establish a continuity of operations plan, if not already in place, that provides for continued care or treatment of residents if a significant number of employees are absent from work or if the facility or residence is evacuated (if such evacuation is feasible);

h.      If applicable, designate a room, unit, or floor of the facility or residence as a separate observation area for newly admitted or readmitted individuals. All new or readmitted residents should be quarantined for fourteen (14) days if feasible;

i.      If feasible, designate a room, unit, or floor of the facility or residence to care for individuals with known or suspected COVID-19 positive status; and provide similar but separate cohort grouping for those who test negative if feasible; and

j.      If feasible, designate a cohort of staff assigned to care for residents with known or suspected COVID-19 positive individuals.

## VI.    <u>EMERGENCY FAST TRACK TEMPORARY EMPLOYMENT</u>

1.      Given the anticipated staff shortages at facilities and residences for vulnerable persons as COVID-19 continues to spread, the Department of Human Resources, with the Department of Employment Services, is directed to gather and post available positions.

2. The Department of Health is directed to examine its regulations applicable to staffing at such facilities and residences and promulgate emergency rules to promote the rapid and flexible hiring of temporary workers.

3. The Department of Health and Emergency Operations Center are directed to devise and implement a plan for outreach to facilities and residences identified in section II to determine if deployment of members of the Medical Reserve Corps or National Guard would be helpful to temporarily address staff shortages, other than deploying the National Guard to any facility connected to law enforcement.

## VII.   **DEFINITIONS**

1. For the purposes of this Order, the term "Visitors and Non-Essential Personnel" includes:

   a. Employees, contractors, or members of the public who do not perform treatment, maintenance, support, or administrative tasks deemed essential to the residence or facility; and

   b. Family members and loved ones of residents and those who have legal authority to make healthcare or other legal decisions for residents, except when a visit is necessary in order for the person with such legal authority to make a healthcare or other legal decision for the resident and a video or telephone visit is not feasible for this purpose.

2. For the purposes of this Order, the term "Visitors and Non-Essential Personnel" does not include:

   a. Hospice care workers;

   b. Emergency personnel;

   c. Lawyers or legal guardians approved for an in-person visit with their client;

   d. Licensed, registered, or certified health care professionals, including an allied health professional from whom a service cannot safely and effectively be provided via telehealth;

   e. Individuals present for youth or emergency hearings held at a District government facility;

   f. Compassionate care visits for end-of-life care for an individual who does not have COVID-19; or

   g. Regulators, auditors, or court-appointed investigators.

## VIII.   SUPERSESSION, NO PRIVATE RIGHT OF ACTION, AND WAIVER

1.      Any subsequent guidance issued by a subordinate agency that conflicts with or
        amends the requirements of this Order shall supersede each provision of sections
        II through VII of this Order, with which it conflicts or which it amends.

2.      Facilities and residences shall monitor published guidance from the Department
        of Health and other regulatory and licensing agencies.

3.      Failure of facilities and residences to adhere to or implement the protocols in
        sections II through VII of this Order does not give rise to any private cause of
        action.

4.      Facilities and residences may apply for a waiver of any provision of sections II
        through VII of this Order through their licensing, monitoring or regulatory body.

## IX.   ENFORCEMENT

1.      Any individual or entity that knowingly violates this Order may be subject to
        civil, criminal, and administrative penalties authorized by law, including sanctions
        or penalties for violating D.C. Official Code § 7-2307, including civil fines or
        summary suspension or revocation of licenses.

2.      Individuals should call 311 to report any suspected violations of this or other
        Mayor's Orders related to the COVID-19 public health emergency.

## X.   AMENDMENTS TO PRIOR MAYOR'S ORDERS

1.      Subsection II.1.a of Mayor's Order 2020-054, dated March 30, 2020 is amended
        to read, "All individuals living in the District, are ordered to stay at their place of
        residence, except as specified in this Order. All individuals visiting or working in
        the District are also subject to the provisions in this Order when in the District."

2.      A new subsection II.5.e of Mayor's Order 2020-054, dated March 30, 2020, is
        added to read, "Individuals using taxis, ride-sharing vehicles, or other private
        transportation providers shall wear a mask or mouth covering."

3.      A new subsection II.5.f of Mayor's Order 2020-054, dated March 30, 2020 is
        added to read, "Employees of and individuals using public transportation are
        strongly encouraged to wear masks or mouth coverings."

4.      A new subsection III.4 of Mayor's Order 2020-053, dated March 24, 2020, is
        added to read, "Food Sellers, Hotels, Taxis, Ride-sharing companies, and other
        private transportation providers must require employees and independent
        contractors to wear gloves and cloth or surgical masks and instruct employees and

independent contractors on safe use. All gloves and masks shall be procured by businesses."

5. A new subsection III.5 of Mayor's Order 2020-053, dated March 24, 2020, is added to read, "Hotels shall post signage at their entrances instructing all guests and visitors to:

    a. wear a mask or mouth covering;

    b. maintain six (6) feet of distance from each other person who is not part of their household;

    c. cough or sneeze away from other people and into a tissue or one's elbow or sleeve and immediately dispose of the tissue in a safe manner; and

    d. not shake hands or engage in any other unnecessary physical contact.

## XI.   EXTENSION OF VALIDITY OF MEDICAL MARIJUANA REGISTRATION IDENTIFICATION CARDS

The validity of each medical marijuana registration identification card that would otherwise expire after February 28, 2020 is extended to the date that is forty-five (45) days after the end of the COVID-19 public health emergency.

## XII.   EXTENSIONS OF PUBLIC EMERGENCY AND PUBLIC HEALTH EMERGENCY

1. By this Order, the public emergency and public health emergency declared by Mayor's Orders 2020-045 and 2020-046, respectively, and extended by Mayor's Order 2020-050, are further extended through May 15, 2020.

2. The provisions of all Mayor's Orders concerning the COVID-19 public health emergency shall continue to apply through May 15, 2020.

## XIII.  EFFECTIVE DATE AND DURATION

This Order shall be effective at 12:01 a.m. on April 17, 2020. The Order shall continue to be in effect through May 15, 2020, or until the date to which the state of emergency is extended, or until this Order is rescinded, superseded, or amended in writing by a subsequent Order.

**MURIEL BOWSER**
**MAYOR**

**GOVERNMENT OF THE DISTRICT OF COLUMBIA**

**ADMINISTRATIVE ISSUANCE SYSTEM**

Mayor's Order 2020-066
May 13, 2020

**SUBJECT**:   Extensions of Public Emergency and Public Health Emergency and Preparation for Washington, DC Reopening

**ORIGINATING AGENCY**:   Office of the Mayor

By virtue of the authority vested in me as Mayor of the District of Columbia pursuant to section 422 of the District of Columbia Home Rule Act, approved December 24, 1973, Pub. L. 93-198, 87 Stat. 790, D.C. Official Code § 1-204.22 (2016 Repl.); in accordance with the COVID-19 Response Emergency Amendment Act of 2020, effective March 17, 2020, D.C. Act 23-247, the COVID-19 Response Supplemental Emergency Amendment Act of 2020, effective April 7, 2020, D.C. Act 23-286, and any substantially similar subsequent emergency or temporary legislation; section 5 of the District of Columbia Public Emergency Act of 1980, effective March 5, 1981, D.C. Law 3-149, D.C. Official Code § 7-2304 (2018 Repl.); section 5a of the District of Columbia Public Emergency Act of 1980, effective October 17, 2002, D.C. Law 14-194, D.C. Official Code § 7-2304.01 (2018 Repl.); section 1 of An Act To Authorize the Commissioners of the District of Columbia to make regulations to prevent and control the spread of communicable and preventable diseases, approved August 11, 1939, 53 Stat. 1408, D.C. Official Code §§ 7-131 *et seq.* (2012 Repl.), Mayor's Order 2020-045, dated March 11, 2020, Mayor's Order 2020-046, dated March 11, 2020, Mayor's Order 2020-050, dated March 20, 2020, and Mayor's Order 2020-063, dated April 15, 2020, it is hereby **ORDERED** that:

## I.   **BACKGROUND**

1.   This Order incorporates the findings of prior Mayor's Orders relating to COVID-19.

2.   Community transmission of COVID-19 remains widespread throughout the District. 6,584 District residents have tested positive for COVID-19 and tragically 350 District residents have lost their lives already due to COVID-19. Further, transmission is widespread in the Maryland and Virginia areas near Washington, DC.

3.   On Thursday, April 23, 2020, I charged an advisory group, ReOpen DC, with recommending a plan for a sustainable reopening of the District through data-driven analysis, community feedback, and guidance from the Johns Hopkins Bloomberg School of Public Health, anchored in four (4) DC values: health, opportunity, prosperity, and equity.

4.   This Order includes certain measures and directives to prepare the District for a phased reopening with mitigation guidelines to ensure a safe and responsive

process. In accordance with guidance from the Centers for Disease Control and Prevention (CDC), the District will reopen its economy after assessing:

    a.    Extensive COVID-19 testing, including capacity to test individuals who are symptomatic, in essential roles, and have had close contacts with individuals who have tested positive for COVID-19;

    b.    Contact tracing for all COVID-19 cases and their close contacts;

    c.    Capacity in the healthcare system to safely care for all patients; and

    d.    Sustained decrease in community spread for fourteen (14) days.

5.    In addition, ReOpen DC is considering other gating factors, including having on hand an adequate supply of personal protective equipment (PPE).

6.    The District has been increasing testing in new locations. Testing is now available at fourteen (14) public and private sites, including member-specific sites, across the District, as well as at hospitals and many physician offices for their patients. The testing program is prioritizing healthcare facility workers, individuals living or working in congregate care settings or who may otherwise be high-risk or have an underlying condition, first responders, critical infrastructure workers, residents with symptoms, and individuals who may be asymptomatic who had close contact with someone who tested positive for COVID-19. Anyone, upon the recommendation of their health care provider, can be tested, and persons can schedule appointments through the Testing Triage Call Center by calling 1-855-363-0333. In addition, the Department of Forensic Sciences has the capacity to perform hundreds of tests per day and has deployed mobile testing units to its inventory of testing tools.

7.    A force of hundreds of new contract tracers is being deployed, including redeployed District government employees and temporary new hires. The District's goal is to provide contract tracing within twenty-four (24) hours for all new cases of COVID-19 so that close contacts may be quarantined to limit the spread of the disease.

8.    Hospitals and healthcare facilities across the District have adequate capacity with available intensive care unit (ICU) beds and ventilators. Additionally, the District has expanded the capacity of beds that would be available in the event of a medical surge by working with healthcare facilities and with the Federal Emergency Management Agency and U.S. Army Corps of Engineers to set up additional beds in the Walter E. Washington Convention Center. Local hospitals also have the capacity to add 1,000 beds within their facilities if needed.

9.    The District continues to acquire PPE, increasing its own resources for distribution through the public health emergency. In addition to acquiring essential items from existing sources, the District has commissioned several local businesses to produce hand sanitizer for its stockpile.

10.  The District also continues to care for its vulnerable populations and those in need by providing groceries and delivery of essential items; voluntary isolation and quarantine sites where individuals may reside if they have symptoms or have been exposed or cannot safely isolate from others in their household; and resources for the District's long-term care facilities.

11.  Due to the diligence of residents and the patience of businesses in complying with various Orders, directives, and guidance, the number of COVID-19 cases and deaths are below previous projections. Still, the District has not yet met the criteria for reopenings. The number of new daily cases of COVID-19 diagnoses has yet to fall and the number of daily deaths has failed to decline. It is therefore necessary to maintain our vigilance, to avoid a rapid increase in the occurrence of new cases and a spike in the number of fatalities, and to protect the public health, safety, and welfare of District residents.

12.  Individuals living, working, and visiting Washington, DC must continue to stay at their place of residence, only leaving for essential activities, essential government functions, essential business, essential travel, or allowable recreation.

13.  If leaving their residence, all individuals must continue to maintain a distance of at least six (6) feet from persons not in their household. Wearing a mask or mouth covering is one tool to protect an individual's own health and the health of others, but it does not replace social distancing.

14.  Because the criteria for reopening have not been met, this Order further extends the public emergency and public health emergency in the District of Columbia through June 8, 2020.

## II. EXTENSIONS OF PUBLIC EMERGENCY AND PUBLIC HEALTH EMERGENCY

1.  By this Order, the public emergency and public health emergency declared by Mayor's Orders 2020-045 and 2020-046, respectively, and extended by Mayor's Orders 2020-050 and 2020-063, respectively, are further extended through June 8, 2020.

2.  The provisions of all Mayor's Orders concerning the COVID-19 public health emergency shall continue to apply through June 8, 2020, unless otherwise modified below.

## III MASK REQUIREMENTS FOR INDIVIDUALS IN THE DISTRICT

1.  Individuals living in, working in, or visiting the District shall wear masks or face coverings when engaging in:

    a.      Essential and Minimum Basic Operations of businesses when persons are in the presence of other persons (e.g., a mask is not required when someone is working alone in an office); and

    b.      Essential Travel if social distance cannot be maintained while engaged in such travel.

2.      The requirement to wear masks or face coverings shall not apply to:

    a.      Children under the age of nine (9) years old. Parents are strongly encouraged to have their children between two (2) and nine (9) years old wear a mask in accordance with CDC guidelines;

    b.      Individuals experiencing homelessness; and

    c.      Individuals who cannot wear a mask or face covering due to a medical condition or disability, or who are unable to remove a mask without assistance.

3.      Individuals are not required to wear masks or face coverings when engaging in Allowable Recreational Activities or Essential Travel when social distance can be maintained.

4.      Each District government agency shall enforce its own policy, established in accordance with guidance of the CDC or Department of Health, regarding when its employees must wear masks or face coverings. When an agency unit has been on telework status, the agency's policies must be communicated to the unit's employees prior to their return to the work site. An employee who violates an agency policy shall be subject to appropriate personnel actions.

5.      All passengers on and operators of any public transportation provided in the District, including Circulator buses; DC Streetcar; Washington Metropolitan Area Transit Authority (WMATA) buses, trains, and MetroAccess vehicles; and Maryland Area Regional Commuter (MARC), Virginia Railway Express (VRE), and Amtrak trains traveling in or through the District, are required to wear masks or face coverings, excluding any operator in a separate compartment that is not accessible by riders. In addition, all individuals in or at a train station, Metrorail station, bus terminal, or other public transit facility must wear masks or face coverings.

6.      All passengers and operators of taxis, Transportation Network Companies (TNCs), and other private transportation providers shall wear masks or face coverings.

## IV.   MASK REQUIREMENTS FOR ESSENTIAL BUSINESSES IN THE DISTRICT

1.   Essential Businesses must require their employees and independent contractors to wear masks or face coverings. Essential Businesses must also instruct their employees and independent contractors on the safe use of masks and face coverings.

2.   Masks or face coverings shall be procured by each Essential Business for its employees. If the Essential Business is unable to procure a sufficient number of masks or face coverings for its employees, employees shall use their own masks or face coverings until adequate supplies are procured by the Essential Business.

3.   Independent contractors shall procure their own masks or face coverings. Essential businesses may, but are not required to, supply their independent contractors with masks or face coverings.

4.   Essential Businesses must post signage at their entrances instructing all employees, contractors, customers, guests, and visitors to:

   a.   Wear a mask or face covering;

   b.   Maintain six (6) feet of distance from each other person who is not part of their household;

   c.   Cough or sneeze away from other people and into a tissue or one's elbow or sleeve and immediately dispose of the tissue in a safe manner;

   d.   Not shake hands or engage in any other unnecessary physical contact;

   e.   If applicable, avoid entering if they are exhibiting a symptom of any transmissible infectious disease such as a cough, fever, and runny nose or have a confirmed COVID-19 diagnosis; and

   f.   If applicable, shop quickly alone or only with members of their household.

5.   Essential Businesses must exclude customers and visitors who are not wearing a mask or face covering, except for:

   a.   Customers or visitors who are exempt from the requirement to wear a mask or face covering; or

   b.   When such an exclusion would violate a federal or District law (such as the Americans with Disabilities Act).

6.   Wearing a medical-grade mask satisfies the requirement to wear a mask or face covering, but all individuals are urged to use cloth masks and reserve medical-grade

masks for use by health care workers and first responders, those working in proximity to vulnerable persons, and those working in such conditions, or having such medical conditions, that they required use of such masks before the current public health emergency.

## V.   **DISTRICT PREPARATION FOR REOPENING**

1.   The Department of Parks and Recreation shall determine whether any of its outdoor facilities, including park athletic fields and dog parks, but not playgrounds, may safely open to members of the public for Allowable Recreational Activity and how the Department would monitor for unsafe crowding in those spaces, taking into consideration: (A) that non-sustained, outdoor contact with an infected individual is far less likely to lead to spread of COVID-19 than indoor, sustained contact; and (B) a shortage of places for safely engaging in outdoor recreation leads to more crowding at places that are open.

2.   The City Administrator shall develop a recommended plan for the restoration of office-based and other site-based District government operations, which shall:

   a.   Provide for restoration of operations in stages, based on the achievement of metrics, including public health, and the public good;

   b.   Provide guidance for District government agencies on the designation of services and functions to return to office-based and other site-based operations;

   c.   Include a preference for continued telework where efficient and effective and provide guidance for supervisors on managing teleworking employees on a longer-term basis;

   d.   Describe employee responsibilities when returning to office-based and other site-based operations;

   e.   Provide guidance on allowing flexibility for employees in returning to office-based and other-site based operations and leave options that such employees may exercise;

   f.   Provide guidance on workplace protections, including physical modifications to workspaces, the supply of appropriate PPE, and cleaning protocols;

   g.   Provide guidance on how to create other flexibilities in the workplace to achieve social distancing guidelines, such as modified employee schedules to allow for lower number of employees at offices and other worksites at any one time; and

h.  Provide guidance on how to reduce crowding once District services return to on-site availability, such as offering appointment-only services.

## VI.  CONTINUATION OF RESTRICTION ON LARGE GATHERINGS

Large gatherings of more than ten (10) individuals not of the same household continue to be prohibited in the District, with the same caveats and exceptions set forth in prior Orders.

## VII.  DEFINITIONS

1.  **"Allowable Recreational Activities**," as defined by Mayor's Order 2020-054 and subsequent interpretive guidance and amendments, means outdoor activities that comply with Social Distancing Requirements.

2.  **"Essential Businesses"** are those defined in Mayor's Order 2020-053 and subsequent interpretive guidance, including taxis, transportation network companies, and other private transportation providers. Businesses that obtain a waiver from the District government to operate, including farmers' markets and fish markets, shall follow all Essential Business guidelines, including guidelines for masks or face coverings.

3.  **"Large Gathering"** as defined in Mayor's Order 2020-053 shall apply to groups of more than ten (10) individuals.

4.  **"Mask or face covering"** means a covering that fully covers a person's nose and mouth. The term "face covering" includes, without limitation, scarves and bandanas.

5.  **"Medical-grade masks"** are those that would be appropriate for a health care setting, such as an N95, KN95, or surgical mask.

6.  **"Minimum Basic Operations"** of non-essential businesses are defined in Mayor's Order 2020-054 and subsequent interpretive guidance.

7.  **"Essential Government Functions"** are defined in Mayor's Order 2020-053 and subsequent interpretive guidance.

8.  **"Essential Travel"** is defined in Mayor's Order 2020-054 and subsequent interpretive guidance.

9.  **"Residence,"** as defined in Mayor's Order 2020-054, includes homes and apartments, hotels, motels, shared rental units, and similar facilities.

10.  **"Social Distancing Requirements"** are defined by Mayor's Order 2020-054.

## VIII.   SUPERSESSION

This Order supersedes any Mayor's Order issued during the COVID-19 public health emergency to the extent of any inconsistency.

## IX.   ENFORCEMENT

1.    Any individual or entity that knowingly violates this Order may be subject to civil, criminal, and administrative penalties authorized by law, including sanctions or penalties for violating D.C. Official Code § 7-2307, including civil fines or summary suspension or revocation of licenses.

2.    Individuals should call 311 to report any suspected violations of this or other Mayor's Orders related to the COVID-19 public health emergency.

3.    Official guidance posted on coronavirus.dc.gov may be relied upon by those seeking to understand whether an activity is or is not allowed.

## X.   EFFECTIVE DATE AND DURATION

This Order shall be effective at 12:01 a.m. on May 16, 2020.  The Order shall continue to be in effect through June 8, 2020, or until the date to which the state of emergency is extended, or until this Order is rescinded, superseded, or amended in writing by a subsequent Order.

MURIEL BOWSER
MAYOR

ATTEST: _____
KIMBERLY A. BASSETT
SECRETARY OF STATE OF THE DISTRICT OF COLUMBIA