UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

LEGAL SEA FOODS, LLC,

       *Plaintiff*,

v.

STRATHMORE INSURANCE COMPANY,

       *Defendant*.

Civil Action No.: 1:20-CV-10850

ORAL ARGUMENT REQUESTED

**LEGAL SEA FOODS, LLC'S OPPOSITION TO DEFENDANT**
**STRATHMORE INSURANCE COMPANY'S MOTION TO DISMISS**

## TABLE OF CONTENTS

INTRODUCTION................................................................................................................1

BACKGROUND.................................................................................................................2

ARGUMENT ....................................................................................................................4

I.      Legal Standards ....................................................................................................4

   A.   The Motion fails to meet Rule 12(b)(6)'s high standard for dismissal .............................4

   B.   An "all-risk" policy is interpreted in light of the policy's plain meaning and the insured's reasonable expectation of coverage, with any remaining ambiguities resolved in the insured's favor..........................................................................................................5

II.     Coronavirus Caused "Direct Physical Loss Of or Damage To" Legal's Property.................5

   A.   Legal Suffered "Direct Physical Loss Of or Damage To" its Property...............................6

   B.   "Direct physical loss of or damage to" property does not require a showing of visible, structural, or tangible damage .......................................................................................8

      1.   *The Policy's plain language does not require a showing of "tangible," "material" "alteration" to property* ........................................................................................8

      2.   *At the very least, two reasonable interpretations of "physical loss of or damage to" presents an ambiguity that must be resolved in Legal's favor* .....................................11

      3.   *The insurance industry has long recognized that virus causes physical loss of or damage to property* ...........................................................................................12

      4.   *Presumed, suspected, or an imminent threat of contamination of the insured property can constitute physical loss or damage*..........................................................12

      5.   *Strathmore's "period of restoration" argument is unavailing* ..................................13

      6.   *The "delay, loss of use or loss of market" exclusion does not apply*............................14

III.    Civil Authority Coverage is Available because the Stay at Home Orders Indisputably Prohibited Access to Legal's Business..........................................................................15

   A.   The Complaint's allegations and civil authority orders demonstrate that Legal's restaurants were closed and make a *prima facie* case for coverage ...................................16

   B.   Legal authority recognizes that access is prohibited when customers are prevented from patronizing a business ..........................................................................................18

IV.     Legal's Chapter 93A Claim Must Also Survive ...............................................................19

CONCLUSION ................................................................................................................20

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Abner, Herrman & Brock, Inc. v. Great N. Ins. Co.*,
    308 F. Supp. 2d. 331 (S.D.N.Y. 2004) .................................................................. 18

*Allmerica Fin. Corp. v. Certain Underwriters at Lloyd's, London*,
    449 Mass. 621 (2007) ........................................................................................ 7, 8

*Am. All. Ins. Co. v. Keleket X-Ray Corp.*,
    248 F.2d 920 (6th Cir. 1957) .................................................................................. 7

*Arbeiter v. Cambridge Mut. Fire Ins. Co.*,
    1996 WL 1250616 (Mass. Super. Mar. 15, 1996) .......................................... 10, 11

*Assurance Co. of Am. v. BBB Serv. Co., Inc.*,
    265 Ga. App. 35 (Ga. Ct. App. 2004) .................................................................. 19

*Boston Gas Co. v. Century Indem. Co.*,
    454 Mass. 337 (2009) ......................................................................................... 5, 9

*Citicorp N. Am., Inc. v. Ogden Martin Sys. of Haverhill, Inc.*,
    8 F. Supp. 2d 72 (D. Mass. 1998) ........................................................................ 20

*Crestview Country Club, Inc. v. St. Paul Guardian Ins. Co.*,
    321 F. Supp. 2d 260 (D. Mass. 2004) .................................................................... 9

*Day v. Fallon Cmty. Health Plan, Inc.*,
    917 F. Supp. 72 (D. Mass. 1996) ........................................................................... 4

*Dictiomatic, Inc. v. U.S. Fid. & Guar. Co.*,
    958 F. Supp. 594 (S.D. Fla. 1997) ....................................................................... 14

*Essex Ins. Co. v. BloomSouth Flooring Corp.*,
    562 F.3d 399 (1st Cir. 2009) .......................................................................... 10, 11

*Eveden, Inc. v. N. Assur. Co. of Am.*,
    No. CIV. A. 10-10061-GAO, 2014 WL 952643 (D. Mass. Mar. 12, 2014) ................. 9

*Friends of DeVito v. Wolf*,
    No. 68 MM 2020 (Pa. April 13, 2020) ................................................................... 6

*Governo v. Allied World Ins. Co.*,
    335 F. Supp. 3d 125 (D. Mass. 2018) .................................................................... 5

*Gregory Packaging, Inc. v. Travelers Prop. Cas. Co.*,
    No. 2:12-cv-04418, 2014 WL 6675934 (D. N.J. Nov. 25, 2014) ......................... 10, 14

*Hampton Foods, Inc. v. Aetna Cas. & Sur. Co.*,
    787 F.2d 349 (8th Cir. 1986) ............................................................................... 13

*HRG Dev. Corp. v. Graphic Arts Mut. Ins. Co.*,
    26 Mass. App. Ct. 374 (1988) ................................................................................. 9

*Jussim v. Massachusetts Bay Ins. Co.*,
    33 Mass. App. Ct. 235 (1992) ............................................................................... 20

*Jussim v. Massachusetts Bay Ins. Co.*,
    415 Mass. 24 (1993) .............................................................................................. 20

*Kean, Miller, Hawthorne, D'Armond McCowan & Jarman, LLP v. Nat'l Fire Ins.
    Co. of Hartford*,
    No. 06-770-C, 2007 WL 2489711 (M.D. La. Aug. 29, 2007) ................................ 18

*Liberty Mut. Ins. Co. v. Tabor*,
    407 Mass. 354 (1990) ............................................................................................ 15

*Markel Am. Ins. Co. v. Pajam Fishing Corp.*,
    691 F. Supp. 2d 260 (D. Mass. 2010) ......................................................... 4, 5, 13

*Matzner v. Seaco Ins. Co.*,
    No. CIV. A. 96-0498-B, 1998 WL 566658 (Mass. Super. Aug. 12, 1998) ............ 11

*Merrimack Mut. Fire Ins. Co. v. Slater*,
    No. 2004110, 2007 WL 2045429 (Mass. Super. June 13, 2007) ........................... 20

*Narricott Indus., Inc. v. Fireman's Fund Ins. Co.*,
    No. CIV. A. 01-4679, 2002 WL 31247972 (E.D. Pa. Sept. 30, 2002) ................... 19

*New England Envtl. Techs. v. Am. Safety Risk Retention Grp., Inc.*,
    738 F. Supp. 2d 249 (D. Mass. 2010) ......................................................... 5, 14, 16

*Oregon Shakespeare Festival Ass'n v. Great Am. Ins. Co.*,
    No. 1:15-CV-01932-CL, 2016 WL 3267247 (D. Or. June 7, 2016) ...................... 13

*Oregon Shakespeare Festival Ass'n v. Great Am. Ins. Co.*,
    No. 1:15-CV-01932-CL, 2017 WL 1034203 (D. Or. Mar. 6, 2017) ...................... 13

*Philadelphia Parking Auth. v. Fed. Ins. Co.*,
    385 F. Supp. 2d 280 (S.D.N.Y. 2005) .............................................................. 11, 18

*Port Auth. v. Affiliated FM Ins. Co.*,
    311 F.3d 226 (3d Cir. 2002) .................................................................................. 12

*Rodi v. S. New England Sch. Of Law*,
    389 F.3d 5 (1st Cir. 2004) ..................................................................................... 15

*Ruiz v. Bally Total Fitness Holding Corp.*,
    496 F.3d 1 (1st Cir. 2007) ................................................................................................ 4, 6

*S. Hospitality, Inc. v. Zurich Am. Ins.*,
    393 F.3d 1137 (10th Cir. 2004) ........................................................................................ 18

*Schiappa v. Natl. Marine Underwriters, Inc.*,
    56 Mass. App. Ct. 161 (2002) ........................................................................................... 5

*Schlamm Stone & Dolan, LLP v. Seneca Ins. Co.*,
    800 N.Y.S.2d 356 (N.Y. Sup. Ct. 2005) ........................................................................ 6, 9

*Sentinel Mgmt. Co. v. New Hampshire Ins. Co.*,
    563 N.W.2d 296 (Minn. Ct. App. 1997) ......................................................................... 10

*Ski Shawnee, Inc. v. Commonwealth Ins. Co.*,
    No. 3:09-CV-02391, 2010 WL 2696782 (M.D. Pa. Jul. 6, 2010) ................................... 18

*Source Food Tech., Inc. v. U.S. Fid. & Guar. Co.*,
    465 F.3d 834 (8th Cir. 2006) ............................................................................................ 8

*Southlanes Bowl, Inc. v. Lumbermen's Mut. Ins. Co.*,
    46 Mich. App. 758 (Mich. Ct. App. 1973) ..................................................................... 19

*Total Intermodal Servs. Inc. v. Travelers Prop. Cas. Co. of Am.*,
    No. CV 17-04908 AB (KSX), 2018 WL 3829767 (C.D. Cal. July 11, 2018) .................. 8

*Travco Ins. Co. v. Ward*,
    715 F. Supp. 2d 699 (E.D. Va. 2010) ............................................................................ 10

*Verrill Farms, LLC v. Farm Family Cas. Ins. Co.*,
    86 Mass. App. Ct. 577 (2014) ......................................................................................... 13

*W. Fire Ins. Co. v. First Presbyterian Church*,
    165 Colo. 34, 437 P.2d 52 (1968) .................................................................................. 10

*Woods v. Wells Fargo Bank, N.A.*,
    733 F.3d 349 (1st Cir. 2013) ....................................................................................... 4, 19

## Statutes and Rules

Fed. R. Civ. P. Rule 12(b)(6) .............................................................................................. 4, 6

Mass. Gen. L. ch. 93A .............................................................................................. 2, 19, 20

## Other Authorities

10A *Couch on Ins*. § 148:46 (3d ed. 2019) ....................................................................... 5, 9

**INTRODUCTION**

This case concerns a refusal by Strathmore Insurance Company ("Strathmore") to cover a claim by Legal Sea Foods, LLC ("Legal") under its "all-risk" policy for business income loss resulting from the direct loss of or physical loss to property caused by Coronavirus. Legal made a claim for these losses under its policy, which has no virus exclusion. In response, Strathmore made a single, two-minute phone call to "investigate" the loss.

Three days later, Strathmore denied Legal's claim based on reasons that shifted over time. Only two of these reasons are raised by Strathmore's Motion to Dismiss (the "Motion"). First, Strathmore claims that Coronavirus caused no physical loss of or damage to Legal's property, despite the plain language of the policy, case law, and scientific understanding to the contrary. Second, Strathmore claims that the policy's civil authority coverage is not triggered because government orders did not "completely prohibit" all access to Legal's locations. In reliance on these defenses, Strathmore also seeks to evade liability under M.G.L. c. 93A ("Chapter 93A"). Strathmore bears a heavy burden in its Motion, and the Motion fails to meet this burden for at least four reasons:

*First*, Legal pleaded facts that adequately support its claim for "direct physical loss of or damage to" its property based on science regarding Coronavirus transmission and its designation as a global pandemic. As a policyholder, Legal's claim for a fortuitous loss to which no exclusion applies satisfies its burden of proving coverage. As a matter of law and fact, Legal has pleaded a plausible set of facts to defeat Strathmore's Motion and stated a covered cause of loss under the Policy.

*Second*, in Massachusetts, the inability to use property for its functional and intended purpose constitutes "direct physical loss of or damage to" property. Tangible, visible, or structural change is not required. To trigger coverage, Legal need only plausibly plead that the presence of Coronavirus caused the loss of use of its property. It has done so, and more. While Strathmore claims that it does not seek adjudication of whether "Coronavirus is capable of causing 'physical loss of or damage to

1

property'" at this time (Motion, p.3), it nonetheless cites to numerous summary judgment decisions that are based on full evidentiary records to suggest Legal failed to allege physical loss of or damage to property. These cases are readily distinguishable. To dismiss Legal's claim at the pleading stage would improperly deny Legal the opportunity to develop its own factual record, just as the insurers did in the cases Strathmore cites.

*Third*, Strathmore's position that the policy's civil authority coverage requires total denial of access to Legal's premises is inconsistent with the policy's terms. The cases it cites in support of its cramped reading share a crucial distinction: not one involves prohibiting customer's entry to the business. Instead, they all address instances where access was merely made difficult. Closure, as the orders required here, is altogether different. At the very least, this creates a question of fact about the purpose of the civil authority orders and the reasons why they were issued. These questions cannot be resolved on a motion to dismiss.

*Fourth*, the Court should deny Strathmore's request to dismiss the Chapter 93A claim. Legal submitted a claim for loss sustained at all of its locations. Strathmore denied coverage based on a single, two-minute phone call with a Legal representative. Whether these facts fail to support a claim under Chapter 93A, as Strathmore contends, cannot be adjudicated absent discovery.

## BACKGROUND

Legal owns and operates restaurants in Massachusetts, the District of Columbia, New Jersey, Pennsylvania, Rhode Island, and Virginia. Legal purchased a commercial property insurance policy from Strathmore. *See* Policy No. 8120T24753 (the "Policy"), Exhibit A to the First Amended Complaint (ECF 14, the "Complaint"). The Policy is "all-risk"; it covers any loss caused by or resulting from a covered cause of loss, unless expressly excluded.

The Policy incepted on March 1, 2020. By then, Coronavirus' effects and potential for community spread were well-known. On February 1, 2020, Boston confirmed its first case of COVID-

19,[1] yet Strathmore issued the Policy without a virus exclusion, even though such an exclusion is widely used in the insurance market. And, indeed, as any reasonable insurer could have and should have predicted, the virus spread like wildfire throughout the United States.

Although the virus's transmission is still under scrutiny, Strathmore does not dispute any of the science-based facts alleged in the Complaint, including the conclusions reached by the World Health Organization, the Centers for Disease Control and Prevention, and other reputable organizations. *See* Complaint, ¶¶ 19-39. Coronavirus is transmitted by contact between humans and with surfaces contaminated by the virus called "fomites." Fomites serve as vehicles of viral transmission long after the human carrier has left the premises. *Id.*, ¶ 30. Legal uses materials capable of sustaining fomites throughout its insured locations. *Id.*, ¶ 27.

Strathmore claims that Legal "studiously avoids even the suggestion that its restaurants were contaminated with Coronavirus." Motion, p.14. This is not so. Not only do each of Legal's insured locations utilize fomite-sustaining materials throughout their operation, each insured location was directly affected by Coronavirus. *See, e.g.,* Complaint, ¶¶ 27, 42, 45, 48, 71, 73 (alleging that Coronavirus has caused a global pandemic which, by definition,[2] means that Coronavirus is present globally). Legal has suffered direct physical loss of or damage to its property caused by the Coronavirus. *Id.*, ¶¶ 48, 73 Legal's operations have also been affected by physical loss of or damage to property elsewhere, which resulted in government orders mandating the closure of Legal's dining rooms. *Id.*, ¶¶ 60-73.

Legal notified Strathmore of its losses, and Strathmore initiated its "investigation": a two-

---

[1] Mass. Dept. of Pub. Health, *Man returning from Wuhan, China is first case of 2019 Novel Coronavirus confirmed in Massachusetts*, Feb. 1, 2020, available at *www.mass.gov/news/man-returning-from-wuhan-china-is-first-case-of-2019-novel-coronavirus-confirmed-in* (last viewed July 6, 2020).

[2] Merriam Webster's Dictionary defines a "pandemic" as "an outbreak of a disease that occurs over a wide geographic area and affects an exceptionally high proportion of the population: a pandemic outbreak of a disease." Available at *www.merriam-webster.com/dictionary/pandemic?utm_campaign=sd&utm_medium=serp&utm_source=jsonld* (last viewed July 6, 2020).

minute phone call to a Legal representative. Strathmore did not request a calculation of Legal's losses, copies of any government orders, or Coronavirus testing. Because it conducted no meaningful investigation, it is no surprise that Strathmore was able to complete its "analysis" and provide it to Legal in a partially-completed form denial letter three days later. When Legal challenged Strathmore's position, Strathmore cited new and additional policy defenses. In view of the insurance industry's general stance on coverage for Coronavirus, which insurance executives have not hesitated to share,[3] it is clear that Strathmore never even considered covering Legal's claim.

## ARGUMENT

### I.      Legal Standards

#### A.      The Motion fails to meet Rule 12(b)(6)'s high standard for dismissal

The Motion is based almost entirely on cases decided on fully-developed summary judgment records. The postural distinction of those cases alone demonstrates the impropriety of the Motion, since it is the facts as applied against the Policy that determine the availability of coverage. *Markel Am. Ins. Co. v. Pajam Fishing Corp.*, 691 F. Supp. 2d 260, 266 (D. Mass. 2010). Strathmore ignores this fundamental precept.

When deciding a Rule 12(b)(6) motion to dismiss, the court "must assume the truth of all well-plead[ed] facts and give the plaintiff the benefit of all reasonable inferences therefrom." *Ruiz v. Bally Total Fitness Holding Corp.*, 496 F.3d 1, 5 (1st Cir. 2007). In addition, the court must "construe all factual allegations in the light most favorable to the non-moving party to determine if there exists a plausible claim upon which relief may be granted." *Woods v. Wells Fargo Bank*, *N.A.*, 733 F.3d 349, 353 (1st Cir. 2013). The court "neither weighs the evidence nor rules on the merits because the issue is not whether plaintiffs will ultimately prevail, but whether they are entitled to offer evidence to support their claims." *Day v. Fallon Cmty. Health Plan, Inc.*, 917 F. Supp. 72, 75 (D. Mass. 1996).

---

[3] *See, e.g.*, Evan G. Greenberg, *What Won't Cure Corona: Lawsuits*, WALL ST. J., Apr. 21, 2020 (Mr. Greenberg is the CEO of Chubb Ltd.).

**B.    An "all-risk" policy is interpreted in light of the policy's plain meaning and the insured's reasonable expectation of coverage, with any remaining ambiguities resolved in the insured's favor**

In Massachusetts,[4] the insured has the initial burden of establishing coverage under its policy, and the insurer has the burden of demonstrating the applicability of exclusions. *Governo v. Allied World Ins. Co.*, 335 F. Supp. 3d 125, 130 (D. Mass. 2018). Under an "all-risk" policy, the insured's burden is minimal. 10A Couch on Ins. § 148:46 (3d ed. 2019). An insured need not prove the cause of the loss, only the loss's fortuity. *Pajam Fishing*, 691 F. Supp. 2d at 266 (finding a showing of accidental loss was sufficient to survive summary judgment); *see also Schiappa v. Nat'l Marine Underwriters, Inc.*, 56 Mass. App. Ct. 161, 165 (2002) (To "show that a fortuitous loss….a showing that loss has occurred is generally sufficient.").

The Court properly construes an insurance policy like any other contract: "according to the fair and reasonable meaning of its words." *New England Envtl. Techs. v. Am. Safety Risk Retention Grp., Inc.*, 738 F. Supp. 2d 249, 254 (D. Mass. 2010). When policy language is ambiguous, a court must construe it in favor of the insured and against the insurer, as the policy's drafter. *Boston Gas Co. v. Century Indem. Co.*, 454 Mass. 337, 356 (2009). "An ambiguity exists when contractual language is susceptible of more than one meaning." *New England Envtl. Techs.*, 738 F. Supp. 2d at 254. "Words that are clear and unambiguous, by themselves, may be ambiguous when read in the context of the entire insurance contract or as applied to the subject matter." *Id.* Where an ambiguity is found, the court must apply the interpretation that is more favorable to the insured, in view of "what an objectively reasonable insured, reading the relevant policy language, would expect to be covered." *Boston Gas*, 454 Mass. at 356.

**II.    Coronavirus Caused "Direct Physical Loss Of or Damage To" Legal's Property**

Strathmore argues for dismissal of Count I (Breach of Contract for Business Interruption and

---

[4] The parties agree that the Policy's interpretation should be governed by Massachusetts law.

Extra Expense Coverage) and Count IV (Declaratory Judgment) of Legal's Amended Complaint, contending Legal failed to plead facts sufficient to show "direct physical loss of or damage to" Legal's property. This is wrong.

As an initial matter, Strathmore admittedly does not challenge Legal's allegations that the presence of Coronavirus constitutes direct physical loss of or damage to property. Motion, p.15. For this reason alone, the Motion must fail, because Legal alleged physical loss of or damage caused by the presence of Coronavirus. Complaint, ¶ 49. Those allegations must be taken as true and all reasonable inferences drawn in favor of Legal. *Ruiz*, 496 F.3d at 5.

The arguments actually raised by Strathmore *likewise fail*, particularly under Rule 12(b)(6). Legal alleged ample support for the conclusion that Coronavirus caused direct physical loss of or damage to Legal's property based upon the nature of the pandemic and the viral transmission. Complaint, ¶¶ 19-39, 48, 73. If the Court disagrees, at a minimum, Legal should be allowed to amend its complaint, as dismissal on this basis would be premature.

### A.     Legal Suffered "Direct Physical Loss Of or Damage To" its Property

Strathmore claims that Legal "studiously avoids even the suggestion that its restaurants were contaminated with Coronavirus." Motion, p.14. This is not so. While much remains unknown about the novel Coronavirus, scientists have confirmed that it can remain in the air and attached to surfaces (fomites) for days or weeks. *See* Complaint, ¶¶ 19-38. As the Pennsylvania Supreme Court just stated:

> The enforcement of social distancing to suppress transmission of the disease is currently the only mitigation tool . . . . COVID-19 does not spread because the virus is 'at' a particular location. Instead it spreads because of person-to-person contact . . . *[and] [t]he virus can live on surfaces for up to four days and can remain in the air within confined areas and structures.*

*Friends of DeVito v. Wolf*, No. 68 MM 2020, at *38-*39 (Pa. April 13, 2020) (emphasis added).

Physical contamination of property by a disease-causing or noxious agent causes physical loss or damage when it is present in or around property. *See, e.g., Schlamm Stone & Dolan, LLP v. Seneca*

*Ins. Co.*, 800 N.Y.S.2d 356 (N.Y. Sup. Ct. 2005); *Am. All. Ins. Co. v. Keleket X-Ray Corp.*, 248 F.2d 920, 925 (6th Cir. 1957). The insurance industry has long known this, *which is precisely why it introduced a virus exclusion*. Strathmore chose not to use this exclusion in the Policy, and it cannot add it now by operation of other Policy provisions. If these other provisions did bar coverage as Strathmore claims they do, the insurance industry would have had no need for a virus exclusion. *Allmerica Fin. Corp. v. Certain Underwriters at Lloyd's, London*, 449 Mass. 621, 628 (2007) ("Every word in an insurance contract must be presumed to have been employed with a purpose and must be given meaning and effect whenever practicable.") (internal quotes omitted).

The ease with which Coronavirus is transmitted and its "staying power" on surfaces has allowed the virus to sweep the globe and cause a staggering death toll. Complaint, ¶¶ 17-19. Legal should not be penalized by the lack of a commercially-available test for fomites or adequate testing supplies for individuals. For Strathmore to insist that coverage under its Policy requires a proof that is not even commercially feasible is absurd and contrary to any reasonable interpretation of the Policy. And, to be sure, the Policy says nothing whatsoever about a COVID-19 positive test result being the only way Legal can show the presence of Coronavirus, and Strathmore made no such demand before its denial.

In any event, Strathmore's unreasonable demand must work both ways. By definition, Legal has shown that the COVID-19 pandemic necessarily means Coronavirus is at its insured locations. Complaint, ¶¶ 17-49. Strathmore has done nothing to rebut that showing. To the extent Strathmore has the means to test insured property, it did not do so here. It failed (or refused) to send an adjuster to the property at all and cannot plead ignorance now. At this stage in the litigation, Legal has stated a plausible set of facts in support of its claim that Coronavirus caused direct physical loss of or damage to its property. *Id.*, ¶ 48.

**B.      "Direct physical loss of or damage to" property does not require a showing of visible, structural, or tangible damage**

    *1.      The Policy's plain language does not require a showing of "tangible," "material" "alteration" to property*

At the outset, we must clarify phrasing, because Strathmore uses two different phrases interchangeably throughout its argument: "physical loss *of* or damage to" and "physical loss or damage to." The difference – though subtle – is significant. *See, e.g., Total Intermodal Servs. Inc. v. Travelers Prop. Cas. Co. of Am.*, No. CV 17-04908 AB (KSX), 2018 WL 3829767, at *3 (C.D. Cal. July 11, 2018) ("[T]he 'loss of' property contemplates that the property is misplaced and unrecoverable, without regard to whether it was damaged. Furthermore, to interpret 'physical loss of' as requiring 'damage to' would render meaningless the 'or damage to' portion of the same clause, thereby violating a black-letter canon of contract interpretation—that every word be given a meaning."); *Source Food Tech., Inc. v. U.S. Fid. & Guar. Co.*, 465 F.3d 834, 838 (8th Cir. 2006) ("[T]he policy's use of the word 'to' in the policy language 'direct physical loss to property' is significant. [The insured's] argument might be stronger if the policy's language included the word 'of' rather than 'to,' as in 'direct physical loss of property' or even 'direct loss of property.' But these phrases are not found in the policy. Thus, the policy's use of the words 'to property' further undermines [the insured's position]."); *Allmerica Fin. Corp.,* 449 Mass. at 628 (2007) ("Every word in an insurance contract 'must be presumed to have been employed with a purpose."). The Policy's insuring agreement uses the broader phrase: "direct physical loss of or damage to." Policy, p.133.

However, the Policy does not define the phrase or any individual word in it. "While undefined words are to be construed in accordance with their plain and ordinary meaning, they are to be strictly construed against the insurer." *Scottsdale Ins. Co. v. Torres*, 561 F.3d 74, 79 (1st Cir. 2009). Strathmore argues that Legal failed to plead its property suffered "a material, tangible, and physical alteration" to fulfill the "physical" element of the Policy's insuring agreement. Motion, p.14. Yet, the

8

Policy itself does not use the terms "material," "tangible," or "alteration." Strathmore cannot modify the Policy now to include such language. *Boston Gas*, 454 Mass. at 355 ("We read the policy as written and are not free to revise it or change the order of the words.").

Strathmore pulls these qualifiers from three distinguishable cases. In each case, the insured sought coverage for an economic loss.[5] Legal does not quibble with the conclusion that economic losses like those in *Crestview*, *Eveden*, and *HRG Development* are not covered, but Legal is not making a claim for economic loss. Legal is claiming that it lost the use of its property for the property's functional, intended, and insured purpose[6] as a restaurant that serves food to guests in its dining rooms because of physical loss of or damage to its property.

In this way, Legal's claim is better classified as among the covered claims described in the next paragraph of the authoritative treatise cited by Strathmore:

> The opposite result has been reached, allowing coverage based on physical damage despite the lack of physical alteration of the property, on the theory that the *uninhabitability* of the property was due to the fact that gasoline vapors from adjacent property had infiltrated and saturated the insured building, and the theory that *the threatened physical damage to the insured building from a covered peril essentially triggers the insured's obligation to mitigate the impending loss by undertaking some hardship and expense to safeguard the insured premises*.

10A Couch on Ins. § 148:46 (3d ed. 2019) (emphasis added); *see also Schlamm Stone & Dolan*, 800 N.Y.S.2d 356 (2005) ("the presence of noxious particles, both in the air and on surfaces in plaintiff's premises, would constitute property damage.").

Massachusetts courts reach the same result. The "direct physical loss of or damage to" element

---

[5] *Crestview Country Club, Inc. v. St. Paul Guardian Ins. Co.*, 321 F. Supp. 2d 260, 264 (D. Mass. 2004) (finding no coverage for "an intangible loss in value of a golf course because of a change in its slope rating, difficulty, etc."); *Eveden, Inc. v. N. Assur. Co. of Am.*, No. CIV. A. 10-10061-GAO, 2014 WL 952643 (D. Mass. Mar. 12, 2014) (finding no coverage for a claim to recoup the value of embargoed assets); *HRG Dev. Corp. v. Graphic Arts Mut. Ins. Co.*, 26 Mass. App. Ct. 374 (1988) (finding no coverage for title defects to construction equipment).

[6] Whether Legal has lost the functional, intended and insured use of its property also raises a factual question as to what Strathmore intended to cover when it underwrote the Policy with knowledge that Legal was a dine-in service restaurant dependent upon the use of its dining rooms to operate its business. It is entirely disingenuous for Strathmore to now say, as it does, that Legal could have still operated on a take-out basis despite knowing what it does about the nature of Legal's business operations.

is fulfilled when a cause of loss renders the property unusable for its intended purpose, even if the loss is intangible. To find otherwise would add language to the Policy that is not there. For example, the First Circuit, applying Massachusetts law, found that an unwanted odor, though intangible, is a covered loss if it results in a loss of use. *Essex Ins. Co. v. BloomSouth Flooring Corp.*, 562 F.3d 399, 405-06 (1st Cir. 2009). The court relied on case law that "dismissed the concept that physical damage could only occur if some tangible injury to the physical structure itself could be detected, noting, common sense requires that a policy should not be so interpreted *in the absence of a provision specifically limiting coverage in this manner.*" *Id.* at 405 (citing *Western Fire Ins. Co. v. First Presbyterian Church*, 165 Colo. 34, 437 P.2d 52 (1968)) (emphasis added). On this basis, the *BloomSouth* court held that causes of loss that result "in a loss of use of the building are reasonably susceptible to an interpretation that physical injury to property has been claimed." *Id.* at 406; *see also Arbeiter v. Cambridge Mut. Fire Ins. Co.*, 1996 WL 1250616, at *3 (Mass. Super. Mar. 15, 1996) (denying insurer summary judgment as "fumes are a physical loss which attach to the property").

The First Circuit's decision in *BloomSouth* is in line with a majority of jurisdictions finding structural damage is not required to show physical loss of or damage to property where the insured property cannot be used for its intended purpose. *See, e.g., Gregory Packaging, Inc. v. Travelers Prop. Cas. Co.*, No. 2:12-cv-04418, 2014 WL 6675934, at *5 (D.N.J. Nov. 25, 2014) ("property can sustain physical loss or damage without experiencing structural alteration"); *Travco Ins. Co. v. Ward*, 715 F. Supp. 2d 699, 708 (E.D. Va. 2010) (insured's residence sustained "direct physical loss" within meaning of homeowners policy when rendered uninhabitable by toxic gases released by drywall, even though drywall was still intact); *Sentinel Mgmt. Co. v. New Hampshire Ins. Co.*, 563 N.W.2d 296, 300 (Minn. Ct. App. 1997) ("Direct physical loss also may exist in the absence of structural damage to the insured property."); *Western Fire Ins. Co.*, 437 P.2d at 55 (concluding plaintiff suffered direct physical loss to insured building when gasoline infiltrated soil, rendering use of building dangerous).

### 2. At the very least, two reasonable interpretations of "physical loss of or damage to" presents an ambiguity that must be resolved in Legal's favor

Even if Strathmore's cases were on point, which they are not, the existence of two reasonable interpretations of the phrase "direct physical loss of or damage to" property gives rise to an ambiguity that the Court should read in Legal's favor. *Matzner v. Seaco Ins. Co.*, No. CIV. A. 96-0498-B, 1998 WL 566658, at *4 (Mass. Super. Aug. 12, 1998).

The facts in *Matzner* are analogous to Legal's claim.[7] The insureds claimed that carbon-monoxide contaminated their apartment building, rendering the building unsafe. *Id.* at *1. The court concluded there were two different interpretations of the phrase "direct physical loss or damage," *as applied to the insured's claim*:

> I find and rule that the phrase "direct physical loss or damage" is ambiguous in that it is susceptible of at least two different interpretations. One includes only tangible damage to the structure of insured property. The second includes a wider array of losses. Following the rule of construction that an ambiguous phrase be accorded the interpretation more favorable to the insured, I adopt the latter interpretation…. I am persuaded by the reasoning of those cases [in other jurisdictions] that have construed the phrase "direct physical loss or damage" broadly, to include more than tangible damage to the structure of insured property.

*Id.* at *3 (Mass. Super. Aug. 12, 1998). Accordingly, the court ruled that carbon-monoxide contamination constituted "direct physical loss of or damage to" property. *Id.* at *4.

Strathmore distinguishes *Matzner* by stating that Legal "does not allege that any injurious element was present in its restaurants, or that anything actually happened to any property within them." Motion, p.18. Again, this is not so. Complaint, ¶ 48. Notwithstanding Strathmore's repeated suggestion that it does not seek a ruling on whether the presence of a virus could ever constitute physical loss of or damage to property, even raising the point highlights the Policy's ambiguity.

---

[7] Strathmore notes that at least one federal court noted that *Matzner* may be "bad law," citing *Philadelphia Parking Auth. v. Fed. Ins. Co.*, 385 F. Supp. 2d 280, 289 (S.D.N.Y. 2005). The First Circuit does not agree, as it saw fit to rely on *Matzner* in upholding a denial of an insurer's motion for summary judgment, even after the New York district court issued its ruling. *BloomSouth*, 562 F.3d at 404-05 ("Essex does not provide any authority in support of its contention that odor cannot constitute physical injury to property. Given *Arbeiter*, *Matzner*, and the cases upon which they rely, the [insured] has met its initial burden [to defeat summary judgment] on this issue.").

### 3.    *The insurance industry has long recognized that virus causes physical loss of or damage to property*

After courts began finding coverage for analogous loss-of-use claims, the insurance industry anticipated the potential for the same finding in matters involving microscopic, disease-causing particles, including viruses. This is why an industry organization drafted a virus exclusion and why many insurers include the exclusion in their policy: they recognized that viruses are a covered cause of loss. Complaint, ¶¶ 55-56. Where insurers choose not cover loss caused by virus, they may exclude it, just like they exclude certain other causes of loss, like earth movement, water, insects and rodents, among many other things. *See, e.g., Policy Form Causes of Loss – Special Form*, the Policy, p.222.

But Strathmore did not exclude virus in the policy it sold to Legal, even though it knew Legal could face a loss caused by virus during the policy period, especially given the proliferation of Coronavirus at the time. Strathmore cannot remedy its failure to exclude loss caused by virus by denying the very reason the exclusion exists in the first place: that viruses are covered causes of loss because they cause physical loss and damage under an all-risk policy.[8]

Here, Legal is seeking coverage for the loss of functional, intended, and insured use of its property due to the pandemic presence of Coronavirus on its property. Because of the presence of Coronavirus, Legal cannot use its restaurant dining rooms and, thus, cannot operate its business. Legal has therefore suffered a loss of use under the Policy's plain terms.

### 4.    *Presumed, suspected, or an imminent threat of contamination of the insured property can constitute physical loss or damage*

Even if Legal alleged that Coronavirus merely threatened its property without claiming actual presence, that allegation would be sufficient to defeat the Motion. Courts have found that the presumed or suspected threat of contamination can constitute physical loss or damage. *See, e.g., Port*

---

[8] Just as the insurance industry developed an exclusion for virus – a covered cause of loss, it also has a separate exclusion for pandemic. Complaint, ¶ 54. Insurers have added pandemic exclusions to policies issued after the Coronavirus pandemic began. This further indicates that insurers are aware a pandemic can be a covered cause of loss.

*Auth. v. Affiliated FM Ins. Co*., 311 F.3d 226, 236 (3d Cir. 2002) (physical loss or damage results "if an actual release of asbestos fibers from asbestos-containing materials has resulted in contamination of the property such that its function is nearly eliminated or destroyed, or the structure is made useless or uninhabitable, *or if there exists an imminent threat of the release of a quantity of asbestos fibers that would cause such loss of utility*") (emphasis added); *Hampton Foods, Inc. v. Aetna Cas. & Sur. Co*., 787 F.2d 349, 352 (8th Cir. 1986) (policyholder could claim business income coverage where risk of collapse necessitated abandonment of grocery store). This is consistent with the minimal burden to prove coverage under an "all-risk" policy. *See Pajam Fishing*, 691 F. Supp. 2d at 266.

### 5.    *Strathmore's "period of restoration" argument is unavailing*

Strathmore also argues that Legal's direct physical loss argument ignores or negates the meaning of the Policy's period of restoration provision. However, the period of restoration provision has nothing to do with the scope of coverage under the Policy. It only measures damages after coverage is confirmed. *Verrill Farms, LLC v. Farm Family Cas. Ins. Co*., 86 Mass. App. Ct. 577, 584 (2014) (the period of restoration "provides the methodology to calculate loss of business income").

What's more, Strathmore's reading both adds to and strips meaning from the period of restoration provision. Strathmore once again seeks to add the word "structural" where the Policy does not use that word[9] and to delete "restoration." In the context of a denial of functional use, it is entirely reasonable for an insured to construe "restoration" as the time it takes to restore the property to its pre-loss condition, regardless of whether any alterations to the structure are necessary. After all, the "period of restoration" is merely a theoretical time period; the "real" purpose of the Policy is to indemnify the insured for the time period that its property cannot be used for its intended purpose.

---

[9] *See, e.g., Oregon Shakespeare Festival Ass'n v. Great Am. Ins. Co*., No. 1:15-CV-01932-CL, 2016 WL 3267247, at *6 (D. Or. June 7, 2016), *vacated by parties' request*, No. 1:15-CV-01932-CL, 2017 WL 1034203 (D. Or. Mar. 6, 2017) ("Defendant [insurer] claims that this period of time [the time it took for smoke to dissipate] cannot be considered 'restoration' because no *structural* repairs were necessary. Once again, the Court can find no such limitation within the terms of the policy.") (emphasis added).

Strathmore's argument that this reading would render the "period of restoration" endless makes no sense. Obviously, the "period of restoration" is the time it takes for the property to be fit for safe use as a restaurant again. *Gregory Packaging, Inc*., 2014 WL 6675934 at *3 (the period of restoration was the time it took for gas to dissipate).[10]

### 6.    The "delay, loss of use or loss of market" exclusion does not apply[11]

Finally, Strathmore lobs an exclusion into the mix, arguing that the exclusion for "loss or damage caused by or resulting from…[d]elay, loss of use or loss of market" bars Legal's claim. Motion, p.18. Strathmore's interpretation flips the exclusion on its head. The exclusion limits coverage to losses flowing from a covered cause of loss and not to losses caused by other, remote factors. As another federal court explained, "to the extent any loss claimed to be a loss of business income by [the insured] was not lost as a direct result of [the covered cause of loss] but rather as a consequence of any other reason, then such loss is excluded from coverage and there can be no recovery… for such loss." *Dictiomatic, Inc. v. U.S. Fid. & Guar. Co*., 958 F. Supp. 594, 604 (S.D. Fla. 1997).

Strathmore's interpretation would render Legal's business income coverage illusory, since any business income claim is necessarily predicated on some covered loss of or damage to the insured property, but it is the loss of use that results in the loss of income. The entire point of business income coverage is to cover business losses while the insured cannot use its property for its intended purpose. Legal's business income loss was caused by the physical loss of or damage to its property, not loss

---

[10] Legal's interpretation is bolstered by the Policy's Extended Business Income provision, which focuses its coverage on the resumption of the insured's operations. The Extended Business Income provision covers loss of income between "the date…'operations' are resumed and ends on…The date you could restore your 'operations', with reasonable speed, to the level which would generate the business income amount that would have existed if no direct physical loss or damage had occurred." Policy, p.135. Thus, it is equally determinative that the Extended Business Income provision confirms there is coverage notwithstanding Strathmore's period of restoration argument. All of these provisions must be read together. *New England Envtl. Techs.*, 738 F. Supp. 2d at 254.

[11] Strathmore raises this exclusion for the first time in its Motion; none of its prior communications brought up this exclusion. Legal addresses the argument here out of an abundance of caution, but only to the extent Strathmore has not waived this defense and is not estopped from raising it now.

of use based on some remote cause. Courts may not read a policy in a way that renders coverage illusory (*see, e.g., Liberty Mut. Ins. Co. v. Tabor*, 407 Mass. 354, 358 (1990)), but that is precisely what Strathmore is asking this Court to do. The argument should be rejected.

In sum, Legal has pleaded the requisite plausible set of facts to sustain its claims and survive Strathmore's Motion. Yet, if there remains any doubt as to the adequacy of Legal's pleadings, Legal should be afforded the opportunity to amend its complaint to bolster what is already plead: COVID-19 causes direct physical loss or damage to property, and that it caused direct physical loss to Legal's property. *See, e.g., Rodi v. S. New England Sch. Of Law*, 389 F.3d 5, 20 (1st Cir. 2004).

## III.    Civil Authority Coverage is Available because the Stay at Home Orders Indisputably Prohibited Access to Legal's Business

Separate and independent from the existence of direct physical loss of or damage to Legal's covered property, coverage also is triged under the Policy's Civil Authority provision. Strathmore does not dispute that civil authority orders closed Legal's restaurants and prohibited the normal operation of its business. A reasonable person would understand that a restaurant closed to customers is one where access is prohibited. Yet Strathmore argues otherwise, contending that the civil authority orders did not "prohibit access" to Legal's restaurants because the restaurants were still permitted to operate carry out and delivery services. This contention fails on a motion to dismiss for two reasons.

*First*, the allegations and civil authority orders make a *prima facie* showing that public "access" to the restaurants was "prohibited" as those terms are commonly understood. Strathmore imputes dispositive importance to the phrase "prohibits access," yet failed to define it in the Policy, and now takes the draconian position that an order must "completely forbid and block[ ] people from accessing any of the premises." The Policy is devoid of any such requirement, which Strathmore could have included if this is what it actually meant.

*Second*, Strathmore attempts to support its policy interpretation through legal authority that shares the same critical distinction: not a single decision involves facts where customers were

prohibited from entering a business. Where civil authority orders have actually closed a business to the public, courts have treated it as a foregone conclusion that "access" has been "prohibited."

**A.      The Complaint's allegations and civil authority orders demonstrate that Legal's restaurants were closed and make a *prima facie* case for coverage**

Strathmore's Motion fails in the first instance because the allegations in the complaint and content of the civil authority orders establish a *prima facie* case for Civil Authority coverage. The operative insuring agreement provides, in relevant part:

> When a Covered Cause of Loss causes damage to property other than property at the described premises, we will pay for the actual loss of Business Income you sustain and necessary Extra Expense *caused by action of civil authority that prohibits access to the described premises* . . .

Policy, p.134, § (emphasis added). Strathmore notes four requisite elements yet takes issue with only one: Legal's "failure and inability to allege that any of the Orders prohibits access to any of the 32 premises insured by the Policy." Motion, p.9. Strathmore asserts that there was no prohibition of access because Legal could still conduct carry out and delivery service. [12] Under Strathmore's strained reading, "access" to restaurants is not "prohibited" unless people were physically incapable of setting foot on Legal's property. The Policy does not say this.

Despite now imputing critical import to the phrase "prohibits access," Strathmore declined to define it. Massachusetts law requires undefined policy terms be given their usual and ordinary meaning in the context of the Policy as a whole. *New England Envtl. Techs.*, 738 F. Supp. 2d at 254. Strathmore asserts that the meaning of "prohibit" is to "formally forbid, esp. by authority" or "prevent." Motion, p.9. It also states that "access" means "a way of approaching or reaching or entering." *Id*. Yet when combining these terms, Strathmore reaches the illogical conclusion that a civil authority order that "prohibits access" is one that "forbids, prevents, *and completely* blocks

---

[12] As the evidence will show, Legal could not operate a carry out or delivery service once the civil authority orders prohibited access to the dining rooms. Doing so would have inflicted *greater* economic losses on the company in violation of the Policy's loss mitigation requirements.

people from approaching, reaching, *and* entering the insured premises." *Id*. (emphasis added). Strathmore's reading constructs a heightened standard that is not grounded in its own definitions, much less the Policy itself.

Strathmore issued this Policy to protect Legal against business interruption due to a civil authority order that prohibits access to its business. From the perspective of a reasonable insured, this does not mean that a civil authority order must *completely* forbid, prevent, *and* block people from approaching, reaching, *and* entering the restaurants. Nothing in the insurer's own definitions requires a total denial of access. And, those definitions are written in the disjunctive, meaning that any order is sufficient so long as it "forbids" *or* "prevents" people from "approaching" *or* "reaching" *or* "entering." The question here is not whether it was physically impossible for someone to get near a Legal restaurant. It is whether the prohibited access denied Legal from running its business of serving food to customers at its restaurants. There is no dispute that the operative complaint alleges precisely that. Complaint, ¶¶ 63-64 (the Stay at Home Orders "have operated to prohibit access to Legal's insured location," and that the "prohibition of access is a result of damage to property and the dangerous physical conditions resulting from that damage"); *Id*. at ¶¶ 65-69 (alleging orders entirely prohibited access to Legal's restaurant dining rooms).[13]

Strathmore does not dispute that the civil authority orders shut down Legal's business at each of the insured premises. At a stage where all allegations must be taken as true and all inferences must be drawn in Legal's favor, the complaint far exceeds the minimum bar on a motion to dismiss.[14]

---

[13] *See* orders attached to the Motion: ECF 17-1, Mayor's Order 2020-048, March 16, 2020 (District of Columbia); ECF 17-2, COVID-19 Order No. 13, March 23, 2020 (Massachusetts); ECF 17-3, Executive order No. 104, March 16, 2020 (New Jersey); ECF 17-4, Order of the Governor, March 19, 2020 (Pennsylvania); ECF 17-5, Executive Order, March 16, 2020 (Rhode Island); ECF 17-6, Executive Order 53, March 23, 2020 (Virginia).

[14] Furthermore, Strathmore's contention that the civil authority orders must provide for an absolute denial of access to Legal's restaurants is belied by other provisions in the policy – provisions which expressly contemplate – if not require – that Legal partially operate when possible to mitigate losses. Strathmore's position raises a factual question involving mitigation, not a legal issue regarding access. For instance, the Business Income section covers loss due to a "suspension" of Legal's "operations," where a "suspension" is any "slowdown or cessation of your business activities" and "operations" are "your business activities occurring at the described premises." Policy, p.133, § (A)(1); p. 141, § (F). Similarly, the Extra Expense section expressly covers those amounts to "[a]void or minimize the 'suspension' of business and to

**B.    Legal authority recognizes that access is prohibited when customers are prevented from patronizing a business**

The meaning of the phrase "prohibits access" in the Civil Authority Coverage is an issue of first impression in Massachusetts and this Circuit. Strathmore suggests that coverage is unavailable unless access to the premises is impossible. Motion, p.10. Accurately stated, Strathmore's authorities hold that coverage is unavailable because the businesses were still permitted to accept customers and conduct ordinary business operations. That is not the case here.

Every case Strathmore cites is equally distinguishable because none involve a situation where customers were prohibited from entering the insured premises for its intended business purpose. *See* Motion, pp.10-11. All involve circumstances where a civil authority order adversely impacted a business, but critically, *did not close it in any form or fashion. See, e.g., S. Hospitality, Inc. v. Zurich Am. Ins.*, 393 F.3d 1137 (10th Cir. 2004) (order grounding air traffic after 9/11 did not bar access to the policyholder's hotel); *Ski Shawnee, Inc. v. Commonwealth Ins. Co.*, No. 3:09-CV-02391, 2010 WL 2696782 (M.D. Pa. Jul. 6, 2010) (closure of main route for ingress to insured's ski resort did not prevent customers from accessing resort through alternate route); *Abner, Herrman & Brock, Inc. v. Great N. Ins. Co.*, 308 F. Supp. 2d. 331 (S.D.N.Y. 2004) (vehicular traffic to the office building was restricted after 9/11 but pedestrian access and access by public transportation were allowed).[15]

Strathmore conveniently ignores the cases where, like here, civil authority orders specifically barred customers from entering the insured premises for its intended purpose. *Kean, Miller,*

---

continue operations at the described premises." *Id*., p.133, § (A)(2)(b)(1). Nothing contemplates a complete closure of the business or an inability to set foot on the premises – in fact, just the opposite. Other provisions directly applicable to the Civil Authority Coverage lead to the same conclusion. For example, the Loss Determination provision describes how Legal's losses will be calculated, and subsection (c) therein requires an offset against the recovery for the "Resumption of Operations." *Id*., p.138, § (C)(3)(c). It specifically provides that the amount payable will be reduced "to the extent you can resume your 'operations', in whole or in part, by using damaged or undamaged property . . . at the described premises or elsewhere." *Id*., p.138, § (C)(3)(c)(1). The policy even imposes a general post-loss duty to "resume *all or part* of your 'operations' as quickly as possible." *Id*., p.137, § (C)(2)(8) (emphasis added). None of these provisions would be necessary if partial operations foreclosed coverage.

[15] As noted previously, all of the cases cited by Strathmore on this issue were decided on summary judgment, *not* a motion to dismiss. The exception is *Philadelphia Parking Auth.*, 385 F. Supp. 2d. 280, where it was undisputed that the order grounding flights did not prohibit access to the subject garages in any way. *Id*. at 289.

*Hawthorne, D'Armond McCowan & Jarman, LLP v. Nat'l Fire Ins. Co. of Hartford*, No. 06-770-C, 2007 WL 2489711, at *6 (M.D. La. Aug. 29, 2007) ("[C]ourts have held that access to an insured premises is 'prohibited' where the order or action of civil authority actually requires the insured's business premises to close, thereby invoking coverage for business losses.") (collecting cases). Under these facts, courts treat it as a foregone conclusion that a civil authority order prohibited access to the premises. *See Assurance Co. of Am. v. BBB Serv. Co., Inc.*, 265 Ga. App. 35 (Ga. Ct. App. 2004) (finding civil authority coverage available when restaurants closed in response to county evacuation order as Hurricane Floyd approached); *Southlanes Bowl, Inc. v. Lumbermen's Mut. Ins. Co.*, 46 Mich. App. 758 (Mich. Ct. App. 1973) (finding civil authority coverage available when governor's order in response to riots forced insured to close its bowling alleys, restaurants, and motels); *Narricott Indus., Inc. v. Fireman's Fund Ins. Co.*, No. CIV. A. 01-4679, 2002 WL 31247972 (E.D. Pa. Sept. 30, 2002) (holding that order of town authorities prohibited access to industrial plant that was directed to suspend operations due to Hurricane Floyd).

The authority cited by Strathmore is inapposite and, if anything, demonstrates that Legal's losses present a quintessential case for Civil Authority Coverage.[16]

## IV.   Legal's Chapter 93A Claim Must Also Survive

Strathmore challenges Legal's Chapter 93A bad faith claim (Count III) contending that Legal failed to plead facts supporting a plausible claim to coverage. For all the above reasons, Strathmore is wrong about coverage.  Thus, the alleged absence of coverage is no basis for dismissal here.

Strathmore then argues that, even if its Motion is unsuccessful (which it should be), the Chapter 93A claim is based only on a mere "disagreement" about the Policy's interpretation and application. But this characterization ignores the well-pleaded facts. *Woods*, 733 F.3d at 353.

---

[16] Strathmore makes a final footnoted argument that the civil authority orders "do not indicate that they were issued because of property damage that had already occurred." Motion, p.12, n.7. This challenges the basis for the orders, which is plainly a factual question for discovery – not a legal issue to be determined on a motion to dismiss.

19

Moreover, dismissal of the claim at this stage is premature in light of Strathmore's failure to carry its burden on the breach of contract claims:

> [T]he ordinary requirement that courts use an indulgent standard when evaluating the sufficiency of complaints at the pleading stage, counsels strongly against the dismissal of contract-based Chapter 93A claims before the plaintiff has had an opportunity to discover the facts concerning the alleged breach and to place the breach in context.

*Citicorp N. Am., Inc. v. Ogden Martin Sys. of Haverhill, Inc.*, 8 F. Supp. 2d 72, 76–77 (D. Mass. 1998) (further noting that discovery for Chapter 93A claim and breach of contract claim was "virtually identical" such that dismissal of the Chapter 93A claim would "not accomplish much").

Over the course of its communications with Legal, Strathmore provided shifting reasons for its denial, including the assertion of a defense that Massachusetts courts have found would "leave the insurance policy practically worthless" and/or unconscionable. Complaint, Exhibit E, p.4 (citing *Jussim v. Massachusetts Bay Ins. Co.*, 33 Mass. App. Ct. 235, 238-39, (1992), *aff'd as amended*, 415 Mass. 24 (1993) and *Merrimack Mut. Fire Ins. Co. v. Slater*, No. 2004110, 2007 WL 2045429, at *6 (Mass. Super. June 13, 2007)). Strathmore did not even bother to complete portions of its form denial letter, much less consider government orders for all of Legal's locations.

Strathmore's investigation before the denial was *pro forma* at best: a two-minute conversation without an on-site investigation or testing. Now, however, Strathmore bases its defense on Legal failure to provide it test results – results which Strathmore knows that Legal cannot procure, because such a test is not commercially available, *and which Strathmore never previously requested*.

If nothing else, the indulgent standard the Court uses when evaluating the sufficiency of complaints at the pleading stage, counsels strongly against the dismissal of Legal's Chapter 93A claims before it has had an opportunity to take discovery.

## **CONCLUSION**

Because Strathmore has failed to show that Legal did not state a plausible set of facts to support its claims, Strathmore's Motion to Dismiss should be denied.

Date:  July 6, 2020

Respectfully submitted,

PLAINTIFF LEGAL SEA FOODS, LLC

By and through its attorneys,

*/s/ Michael s. Levine*
Michael S. Levine (BBO # 633248)
   *mlevine@hunton.com*
HUNTON ANDREWS KURTH LLP
2200 Pennsylvania Ave. NW
Washington, DC 20037
Phone:  (202) 955-1857
Fax:  (202) 778-2201

Harry L. Manion, III (BBO # 317440)
   *hmanion@hunton.com*
Christopher M. Pardo (BBO # 674674)
   *cpardo@hunton.com*
Anna L. Rothschild (BBO # 703881)
   *arothschild@hunton.com*
HUNTON ANDREWS KURTH LLP
60 State Street, Suite 2400
Boston, MA 02116
Phone:  (617) 648-2700
Fax:  (617) 433-5022

 -and-

Rachel E. Hudgins (*pro hac vice* pending)
   *rhudgins@hunton.com*
HUNTON ANDREWS KURTH LLP
Bank of America Plaza, Suite 4100
600 Peachtree St. NE
Atlanta, GA 30308
Phone:  (404) 888-4000
Fax:  (404) 888-4190

## CERTIFICATE OF SERVICE

I, Michael S. Levine, hereby certify that I served the foregoing on all counsel of record,

through the Court's CM/ECF e-filing system on July 6, 2020.

*/s/ Michael S. Levine*
Michael S. Levine

21