UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| LEGAL SEA FOODS, LLC,<br><br>*Plaintiff*,<br><br>v.<br><br>STRATHMORE INSURANCE COMPANY,<br><br>*Defendant*. | Civil Action No.: 1:20-CV-10850<br><br>LEAVE TO FILE GRANTED<br>ON JULY 22, 2020 (ECF 24) |

**LEGAL SEA FOODS, LLC'S SUR-REPLY IN OPPOSITION TO
DEFENDANT STRATHMORE INSURANCE COMPANY'S
<u>MOTION TO DISMISS</u>**

# **TABLE OF AUTHORITIES**

Page(s)

**Cases**

*Assurance Co. of Am. v. BBB Serv. Co., Inc.*,
   265 Ga. App. 35 (2004) .................................................................................................. 4

*Foss v. Marvic*,
   365 F. Supp. 3d 164 (D. Mass. 2019) ............................................................................ 2

*Gavrilides Mgmt. Co. v. Michigan Ins. Co.*,
   Case No. 20-258-CB-C30 (Mich. Cir. Ct. July 1, 2020) ................................................ 5

*Kean, Miller, Hawthorne, D'Armond McCowan & Jarman, LLP v. Nat'l Fire Ins. Co. of Hartford*,
   No. 06-770-C, 2007 WL 2489711 (M.D. La. Aug. 29, 2007) ................................... 4, 5

*Lucey v. Prudential Ins. Co. of Am.*,
   783 F. Supp. 2d 207 (D. Mass. 2011) ............................................................................ 2

*Markel Am. Ins. Co. v. Pajam Fishing Corp.*,
   691 F. Supp. 2d 260 (D. Mass. 2010) ............................................................................ 2

*Narricott Indus., Inc. v. Fireman's Fund Ins. Co.*,
   No. CIV.A.01-4679, 2002 WL 31247972 (E.D. Pa. Sept. 30, 2002) ............................. 4

*O'Hara v. Diageo-Guinness, USA, Inc.*,
   370 F. Supp. 3d 204 (D. Mass. 2019) ............................................................................ 2

*O'Hara v. Diageo-Guinness, USA, Inc.*,
   306 F. Supp. 3d 441 (D. Mass. 2018) ............................................................................ 2

*Social Life Magazine, Inc. v. Sentinel Ins. Co. Ltd.*,
   No. 20 Civ. 3311 (VEC) (S.D.N.Y. May 14, 2020) ...................................................... 5

*Southlanes Bowl, Inc. v. Lumbermen's Mut. Ins. Co.*,
   46 Mich. App. 758 (1973) .............................................................................................. 4

**Other Authorities**

5 Charles Alan Wright & Arthur R. Miller, *Federal Practice & Procedure* § 1243
   (3d ed.) .......................................................................................................................... 2

Fed. R. Civ. P. 12(b)(6) .......................................................................................................... 2

Mass. Gen. L. ch. 93A ........................................................................................................... 5

But for two transcripts from foreign jurisdictions, Strathmore offers no new evidence or new arguments. Strathmore's continued attack on Legal's Civil Authority claim is an obvious distraction from the Policy's broader Business Income coverage. The Policy's Business Income coverage is triggered where Legal shows, as it has, that it suffered either a "physical loss of" its property's functional use __or__ "damage to" its own property. *See* ECF 14-1, p. 133, § A.1. ("Policy"). If Business Income is triggered, so, too, is the Policy's Extra Expense coverage. *Id.* at § A.2.

Critically, however, because Legal has pled that the Stay at Home orders are predicated on damage to property caused by COVID-19 and that COVID-19 has damaged property at Legal's locations, any damage triggering the Policy's Civil Authority coverage necessarily triggers the Policy's Business Income coverage in this instance. *Id.* at § A.1. (Business Income coverage requires "physical loss of or damage to property at [the described] premises"); *Id.* at § A.5.a. (Civil Authority coverage requires "damage to property other than property at the described premises"). This distinction matters, as the Business Income coverage has no "prohibition of access" requirement.

Against this background, the subtext of Strathmore's vociferous, full-throated attack on Civil Authority coverage speaks volumes. Despite two briefs, Strathmore never addresses Legal's allegations that COVID-19 is a Covered Cause of Loss and that Strathmore chose *not* to exclude loss caused by virus despite available virus exclusions and despite knowing about COVID-19 when it issued the Policy. Strathmore's silence in this regard is deafening.

**ARGUMENT**

**I.      Legal alleges physical loss of or damage to its property**

Strathmore maintains that Legal failed to allege facts sufficient to establish that Coronavirus is present in every one of Legal's restaurants. ECF 22, p. 6 (Strathmore's "Reply"). This is simply wrong. The Policy has three requirements; all of which have been sufficiently alleged here. Legal sustained a loss of Business Income (1) "due to the necessary 'suspension' of [its] 'operations'" (ECF 14; "Compl."

1

at ¶¶ 43-45, 71, 118); (2) "during the 'period of restoration'" (*Id.* at ¶¶ 46, 72, 118); and (3) "caused by direct physical loss of or damage to property at premises which are described in the Declarations." (*Id.* at ¶¶ 48, 73, 117, 118; ECF 14-3, pp. 1-2; ECF 14-5, pp. 1, 4.). Policy, p. 133, § A.1.

As the cited paragraphs plainly show, Legal met its burden.[1] It did so affirmatively, with sufficient factual support, and without calling upon the Court to make a "presumption" in its favor, even though it is only required to set forth "inferential" factual allegations and technical precision is not necessary. *Lucey v. Prudential Ins. Co. of Am.*, 783 F. Supp. 2d 207, 211 (D. Mass. 2011) (citations omitted); 5 Charles Alan Wright & Arthur R. Miller, *Federal Practice & Procedure* § 1243 (3d ed.).

Yet Strathmore complains that Legal points to no test to confirm its allegations. Reply, p. 8, n. 6. Strathmore's complaints are baseless; the Policy does not require such proof. Nor is such an obligation in alignment with Legal's minimal burden as both an "all-risks" policyholder and a plaintiff facing a Rule 12(b)(6) motion. 10A Couch on Ins. § 148:46 (3d ed. 2019). There is no commercially-available test to detect COVID-19 on property, and Strathmore did not ask Legal to perform such a test. Regardless, Legal need not prove the cause of the loss, only the loss's fortuity. *Markel Am. Ins. Co. v. Pajam Fishing Corp.*, 691 F. Supp. 2d 260 (D. Mass. 2010).

Legal has suffered a non-excluded[2] – and therefore covered – cause of loss. Legal complied with the Policy terms. But Strathmore breached the Policy by failing to pay Legal's claim. *See Foss v. Marvic*, 365 F. Supp. 3d 164, 167 (D. Mass. 2019) ("In order to state a claim for breach of contract, a plaintiff must allege the existence of a contract, his compliance with its terms, breach, and damages."). These allegation are sufficient to survive a motion to dismiss.

---

[1] Under Rule 12(b)(6), the district court must consider the complaint and attached exhibits, whose authenticity is not disputed by the parties. *O'Hara v. Diageo-Guinness, USA, Inc.*, 306 F. Supp. 3d 441, 450 (D. Mass. 2018), *on reconsideration*, 370 F. Supp. 3d 204 (D. Mass. 2019). Strathmore did not dispute the authenticity of the exhibits to the Complaint.

[2] Had Strathmore intended to exclude virus as a cause of loss, it had the means to do so. *See* Compl. ¶¶ 55-57. It chose not to.

**II.     Strathmore's Civil Authority Argument is Contrary to the Policy Language and Cited Authority**

Strathmore's arguments against Civil Authority coverage are merely recycled from its opening brief. Nowhere, however, does Strathmore explain how its heightened "prohibition of access" argument finds support in the terms of the Policy or the many cases to which it cites. On the contrary, every case Strathmore cites is factually distinguishable; none involve a prohibition from entering a business for its intended business purpose.

**A.     Strathmore abandons its "plain language" reading of the Policy**

If nothing else, the parties agree that the Policy's plain language controls the availability of Civil Authority coverage. ECF 17, pp. 9-10. Yet Strathmore's argument ignores that language, contending that the subject governmental orders did not "prohibit access" to Legal's restaurants.

Strathmore asserts that "prohibit" means to "formally forbid, esp. by authority" or "prevent," while "access" means "a way of approaching or reaching or entering." *Id*. These requirements are written in the disjunctive – meaning that a prohibition of access has occurred if the order ***either*** "forbids" ***or*** "prevents" people from "approaching" ***or*** "reaching" ***or*** "entering" the premises. Strathmore ignores this fundamental aspect of its own definitions.

Legal's allegations meet this threshold, as they state that the civil authority orders (1) forbade customers from entering restaurant dining rooms ***and*** (2) prohibited access to Legal's insured locations. Compl., ¶¶ 46, 63-69.[3] Strathmore does not defend its deconstructed "plain language" reading, much less square its interpretation with its proffered definitions.[4]

---

[3] Strathmore accuses Legal of falsely representing the absence of a dispute over whether the civil authority orders shut down Legal's business. Reply, p.1, n.2. It is a fact that Legal closed its restaurants as a direct result of the civil authority orders. While Strathmore can attempt to dispute the factual basis for the closure in the future, this factual challenge is not proper under Rule 12(b)(6), as the Court must accept Legal's allegations as true.

[4] Strathmore retorts that if a customer was denied access to one of Legal's restaurants, it was because Legal *"decided to lock the doors* after having determined that serving its customers only through carry-out and delivery was not in keeping with its 'reputation and brand.'" Reply, p.2 (emphasis in original). This attempt to blame Legal for its COVID-19 losses falls flat. As Legal explained in its Opposition, operating carry-out or delivery services without open dining rooms would have caused it even *greater* financial losses. If Strathmore intends to

### B. Strathmore fails to defend its inapposite legal authority

Strathmore fails to cite a single case decided in its favor under analogous facts. In fact, *every* case cited by Strathmore is distinguishable because *not one* addresses a situation where customers were prohibited from entering the insured premises for its intended business purpose. Opposition, p.18. Legal, on the other hand, has directed the Court to numerous opinions confirming that Civil Authority coverage is available when governmental orders bar customers from entering the insured premises for its intended purpose.[5] Incapable of distinguishing these cases, Strathmore continues to claim that "only a total prohibition of access triggers coverage." Cases cited by Legal hold otherwise.

In *BBB Serv. Co.* and *Southlanes Bowl*, for example, the orders did not "forbid[], prevent[], [or] completely block[] people from approaching, reaching, and entering the insured premises." Motion, p. 9. One was an evacuation order due to an impending hurricane; the other was a precautionary measure against rioting. If the dispositive inquiry was whether people could physically set foot on the insured premises, both cases would have been decided in the insurer's favor, because both properties were still accessible. The courts instead ruled for the policyholders because, as here, the orders required closure to the public rendering the properties unusable for their intended purpose.

Rather than refute Legal's on-point authority, Strathmore devotes pages to *Kean, Miller, Hawthorne, D'Armond McCowan & Jarman, LLP v. Nat'l Fire Ins. Co. of Hartford*, No. 06-770-C, 2007 WL 2489711 (M.D. La. Aug. 29, 2007). Reply, pp. 2-3. But *Keen Miller,* is distinguishable. In *Keen Miller,* no order *required* closures – the business closed based on a "recommendation" "that

---

argue that Legal's restaurants should have stayed open despite the economics, this is a damages argument – not an issue of law.

[5] *Assurance Co. of Am. v. BBB Serv. Co., Inc.*, 265 Ga. App. 35 (2004) (finding that civil authority coverage was available when restaurants closed because of a hurricane evacuation order); *Southlanes Bowl, Inc. v. Lumbermen's Mut. Ins. Co.*, 46 Mich. App. 758 (1973) (finding that civil authority coverage was available when a governor's order in response to civil commotion forced the insured to close its bowling alleys, restaurants, and motels); *Narricott Indus., Inc. v. Fireman's Fund Ins. Co.*, No. CIV.A.01-4679, 2002 WL 31247972 (E.D. Pa. Sept. 30, 2002) (holding that a town order prohibited access to plant that was directed to suspend operations due to Hurricane Floyd).

4

residents remain off the streets if possible." *Id*. at *4. The basis for the court's decision was the absence of a nexus between "the civil authorities' advisories and access to Kean Miller's premises." *Id*. at *6. *Kean Miller* does not advance Strathmore's position – it confirms that "access" is "prohibited" and coverage is triggered when a business closes due to an order requiring it to do so. *Id*. That is the case here, and it is precisely what Legal alleged. Compl., ¶¶ 63-69.[6]

### III.     Legal's Chapter 93A Claim Must Remain

Finally, Strathmore argues that the Court should dismiss Legal's Chapter 93A claim, because courts in two other jurisdictions did so, *ergo*, Strathmore must have acted reasonably, months earlier. Reply, p. 9. Setting aside the differing policy language, facts, and circumstances pertinent to the claims made by those policyholders, Legal's Chapter 93A claim should remain not just because Legal disagrees with Strathmore's interpretation of the Policy (although it does), but because Strathmore utterly failed to investigate and adjust Legal's covered claim. Stated simply, Strathmore's violation of Chapter 93A is about more than a disagreement over the Policy; it is about Strathmore's unfair and deceptive conduct in handling Legal's claim. No case from any other jurisdiction can speak to that.[7]

---

[6] To contextualize Civil Authority coverage, Legal's Opposition pointed to Policy provisions demonstrating that (1) coverage is not predicated on a complete closure of a business, and (2) to find otherwise would render certain provisions governing loss determination and mitigation meaningless. Opposition, pp.17-18, n.14. Rather than square its interpretation with these provisions, Strathmore merely says that these other provisions simply do not apply to Civil Authority coverage. Reply, p.5, n.4.

Strathmore also reiterates its unsupported argument that the civil authority orders were not issued because of property damage. Reply, p.5, § I(C). Legal's allegations, which must be accept as true, state that the orders were issued, in part, because of direct physical loss of or damage to property. Compl., ¶¶ 61-62. If Strathmore seeks to prove otherwise, the appropriate vehicle is not a motion to dismiss.

[7] Even on their merits, the two foreign decisions cited by Strathmore are procedurally and factually inapposite. In *Social Life Magazine, Inc. v. Sentinel Ins. Co. Ltd.,* No. 20 Civ. 3311 (VEC) (S.D.N.Y. May 14, 2020), for example, the parties were before the court on a request for a preliminary injunction. Without any offer of proof, the policyholder attempted without success to demonstrate a likelihood of success on the merits. The plaintiff then voluntarily dismissed its case before perfecting its appeal to the Second Circuit.

*Gavrilides Mgmt. Co. v. Michigan Ins. Co.*, Case No. 20-258-CB-C30 (Mich. Cir. Ct. July 1, 2020), in contrast, is based on entirely different facts. Most notably, unlike Legal, the policyholder in *Gavrilides* failed to allege any physical loss of or damage to covered property (Tr. at 20:4-5), and the Policy at issue contained a virus exclusion that the court found to unambiguously apply to bar coverage for the policyholder's claim (Tr. at 21:19-22:18). As Legal has alleged, Strathmore elected to issue the Policy to Legal without a virus exclusion, even though such exclusions were readily available to Strathmore. *See* Compl. ¶¶ 55-57.

5

Date:  July 27, 2020　　　　　　　　　　　　Respectfully submitted,

PLAINTIFF LEGAL SEA FOODS, LLC

By and through its attorneys,

*/s/ Michael S. Levine*
Michael S. Levine (BBO # 633248)
  *mlevine@hunton.com*
HUNTON ANDREWS KURTH LLP
2200 Pennsylvania Ave. NW
Washington, DC 20037
Phone:  (202) 955-1857
Fax:  (202) 778-2201

Harry L. Manion, III (BBO # 317440)
  *hmanion@hunton.com*
Christopher M. Pardo (BBO # 674674)
  *cpardo@hunton.com*
Anna L. Rothschild (BBO # 703881)
  *arothschild@hunton.com*
HUNTON ANDREWS KURTH LLP
60 State Street, Suite 2400
Boston, MA 02116
Phone:  (617) 648-2700
Fax:  (617) 433-5022

 -and-

Rachel E. Hudgins (*pro hac vice*)
  *rhudgins@hunton.com*
HUNTON ANDREWS KURTH LLP
Bank of America Plaza, Suite 4100
600 Peachtree St. NE
Atlanta, GA 30308
Phone:  (404) 888-4000
Fax:  (404) 888-4190

**CERTIFICATE OF SERVICE**

I, Michael S. Levine, hereby certify that I served the foregoing on all counsel of record, through the Court's CM/ECF e-filing system on July 27, 2020.

>*/s/ Michael S. Levine*
>Michael S. Levine