```
              United States District Court
                District of Massachusetts
```

| | |
|---|---|
| **Legal Sea Foods, LLC,** ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Civil Action No. |
| ) | 20-10850-NMG |
| **Strathmore Insurance Company,** ) | |
| ) | |
| Defendant. ) | |

**MEMORANDUM & ORDER**

**GORTON, J.**

This case arises out of a dispute between Legal Sea Foods, LLC ("Legal") and Strathmore Insurance Company ("Strathmore") over insurance coverage for business interruption losses suffered by the insured during the COVID-19 pandemic. Pending before the Court is defendant's motion to dismiss plaintiff's second amended complaint.

I. **Factual Background**

Legal is a seafood restaurant chain that owns and operates dozens of restaurants in the eastern United States. Thirty-two of its restaurants located in Massachusetts, the District of Columbia, New Jersey, Pennsylvania, Rhode Island and Virginia ("the Designated Properties") are covered by a commercial

-1-

property insurance policy ("the Policy") issued by Strathmore for a one-year term beginning on March 1, 2020.

The Policy provides for Business Income (and Extra Expense) Coverage for income lost and expenses incurred during a necessary "suspension" of operations caused by "direct physical loss of or damage to" the Designated Properties.  The loss or damage must also be caused by or result from a "Covered Cause of Loss," which is defined in the Policy as a "Risk[] Of Direct Physical Loss unless the loss is: [excluded] or [limited]."  The Policy also provides additional coverage for business income losses and expenses that are "caused by action of civil authority that prohibits access" to the Designated Properties when a Covered Cause of Loss "causes damage to property other than" the Designated Properties as long as two additional conditions are met.

During the term of the Policy, state and local governments nationwide issued various orders in response to the COVID-19 pandemic ("the Orders").  The Orders mandated, inter alia, that residents remain in their residences unless performing certain essential activities and temporarily prohibited on-premises dining at restaurants.

In late March, 2020, Legal submitted a claim to Strathmore seeking insurance coverage under the Policy for its business interruption losses purportedly caused by the Orders. Although the substance of each Order varies by state and locality, Legal alleges that the Orders caused many of its restaurants to close or required it to limit guest capacity and to install protective barriers to reduce the spread of the virus. Legal declares that it has experienced a significant adverse impact on its business even where its restaurants have been permitted to continue delivery and take-out operations. It also avers that the virus has been physically "present" at its restaurants, outlining a "handful of examples" of individuals who were known, or suspected, to be infected at various Designated Properties.

Following an investigation of plaintiff's claim, which Legal purports consisted of a single, brief telephone call, Strathmore denied the claim. It also denied a subsequent request by Legal to reconsider its coverage determination.

## II. **Procedural Background**

Plaintiff filed its complaint against defendant in this Court on May 4, 2020, alleging two counts of breach of contract and one count seeking a declaratory judgment. It filed its

first amended complaint ("FAC") on June 5, 2020, in which it added a claim for a violation of M.G.L. c. 93A ("Chapter 93A").

Defendant filed its motion to dismiss the FAC pursuant to Fed. R. Civ. P. 12(b)(6) on June 19, 2020, which plaintiff timely opposed.

In September, 2020, plaintiff moved for leave to file a second amended complaint ("SAC"), which this Court allowed the following month.  In the SAC, Legal alleges the same four counts as in the FAC: breach of contract for failure to pay business interruption and extra expense coverage (Count I); breach of contract for failure to pay civil authority coverage (Count II); unfair or deceptive acts or practices in violation of Chapter 93A; and declaratory judgment (Count IV).  Legal also alleged the actual presence of the COVID-19 virus at the Designated Properties and the purported resulting damage.

The parties subsequently filed short, supplemental memoranda in support of their positions with respect to the motion to dismiss.

### III. **Motion to Dismiss**

#### A. **Legal Standard**

To survive a motion to dismiss, a claim must contain sufficient factual matter, accepted as true, to "state a claim

to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007).  In considering the merits of a motion to dismiss, the Court may only look to the facts alleged in the pleadings, documents attached as exhibits or incorporated by reference and matters of which judicial notice can be taken. Nollet v. Justices of Trial Court of Mass., 83 F. Supp. 2d 204, 208 (D. Mass. 2000), aff'd, 228 F.3d 1127 (1st Cir. 2000).

Furthermore, the Court must accept all factual allegations in the claim as true and draw all reasonable inferences in the claimant's favor. Langadinos v. Am. Airlines, Inc., 199 F.3d 68, 69 (1st Cir. 2000).  If the facts in the claim are sufficient to state a cause of action, a motion to dismiss must be denied. See Nollet, 83 F. Supp. 2d at 208.

Although a court must accept as true all the factual allegations in a claim, that doctrine is not applicable to legal conclusions. Ashcroft v. Iqbal, 556 U.S. 662 (2009).  Threadbare recitals of legal elements which are supported by mere conclusory statements do not suffice to state a cause of action. Id.

**B.   Application**

The instant dispute, like many others to have been adjudicated across the country in recent months, primarily turns on the meaning of the phrase "direct physical loss of or damage to" property, which is a prerequisite to coverage under the business income and extra expense provisions of the Policy.

The interpretation of an insurance policy is a question of law. See Ruggerio Ambulance Serv. v. Nat'l Grange Mut. Ins. Co., 430 Mass. 794, 797 (2000).  The parties agree, and this Court concurs, that Massachusetts law governs the interpretation of the Policy and under Massachusetts law, courts are to

> construe an insurance policy under the general rules of contract interpretation, beginning with the actual language of the polic[y], given its plain and ordinary meaning.

Easthampton Congregational Church v. Church Mut. Ins. Co., 916 F.3d 86, 91 (1st Cir. 2019) (internal citation omitted). Although ambiguous words or provisions must be resolved against the insurer, id. at 92,

> provisions [that] are plainly and definitely expressed in appropriate language must be enforced in accordance with [the policy's] terms.

High Voltage Eng'g Corp. v. Fed. Ins. Co., 981 F.2d 596, 600 (1st Cir. 1992) (internal citation omitted).

### 1. Breach of Contract – Business Income & Extra Expense Coverage (Count I)

Strathmore contends that Count I should be dismissed because Legal cannot plead facts sufficient to show "direct physical loss of or damage to" property at any of the 32 Designated Properties. Legal rejoins, however, that its allegations in the SAC, namely that COVID-19 was present on its properties and caused physical loss or damage to those properties resulting in the suspension of its operations, are more than enough to survive dismissal at this stage.

First, Legal does not plausibly allege that its business interruption losses resulted from the presence of COVID-19 at the Designated Properties. Instead, it indicates in the SAC that "[t]he Orders caused and are continuing to cause" the losses for which it claims entitlement to coverage.

Second, even if Legal had properly alleged that COVID-19 caused business interruption losses due to its presence at the Designated Properties, it would not be entitled to coverage under the Policy. Courts in Massachusetts have had occasion to interpret the phrase "direct physical loss" and have done so narrowly, concluding that it requires some kind of tangible, material loss. See, e.g., Harvard St. Neighborhood Health Ctr.,

-7-

Inc. v. Hartford Fire Ins. Co., No. 14-13649-JCB, 2015 U.S. Dist. LEXIS 187495, at *18 (D. Mass. Sept. 22, 2015) ("Intangible losses do not fit within th[e] definition [of 'direct physical loss']."); Crestview Country Club, Inc. v. St. Paul Guardian Ins. Co., 321 F. Supp. 2d 260, 264-65 (D. Mass. 2004) (collecting cases).  Accordingly, the plain meaning of "direct physical loss"

> require[s] some enduring impact to the actual integrity [of the insured premises and] does not encompass transient phenomena of no lasting effect.

SAS Int'l, Ltd. v. General Star Indem. Co., No. 1:20-cv-11864, 2021 U.S. Dist. LEXIS 31093, at *10 (D. Mass. Feb. 19, 2021).

The COVID-19 virus does not impact the structural integrity of property in the manner contemplated by the Policy and thus cannot constitute "direct physical loss of or damage to" property.  A virus is incapable of damaging physical structures because "the virus harms human beings, not property." Wellness Eatery La Jolla LLC v. Hanover Ins. Grp., No. 20cv1277, 2021 U.S. Dist. LEXIS 23014, at *16 (S.D. Cal. Feb. 3, 2021).  The presence of the virus at insured locations

> would not constitute the direct physical loss or damage required to trigger coverage under the Policy because the virus can be eliminated.  The virus does not threaten the structures covered by property insurance policies, and can be removed from surfaces with routine cleaning and disinfectant.

-8-

Terry Black's Barbecue, LLC v. State Auto. Mut. Ins. Co., No. 1:20-CV-665, 2020 U.S. Dist. LEXIS 234939, at *20 (W.D. Tex. Dec. 14, 2020) (also observing that "[p]laintiffs have not pled any facts showing that the coronavirus caused physical loss, harm, alteration, or structural degradation to their property").

Many other courts have concluded likewise and have dismissed complaints containing similar allegations. See, e.g., SAS Int'l, Ltd., 2021 U.S. Dist. LEXIS 31093, at *8 n.4 (D. Mass. Feb. 19, 2021) ("[N]o reasonable construction of the phrase 'direct physical loss,' however broad, would cover the presence of a virus."); Uncork & Create LLC v. Cincinnati Ins. Co., 2020 U.S. Dist. LEXIS 204152, at *13-14 (S.D.W. Va. Nov. 2, 2020) (stating that "even actual presence of the virus would not be sufficient to trigger coverage for physical damage or physical loss to the property [and] the pandemic impacts human health and human behavior, not physical structures"); Pappy's Barber Shops, Inc. v. Farmers Grp., Inc., No. 20-CV-907-CAB-BLM, 2020 U.S. Dist. LEXIS 182406, at *2-3 (S.D. Cal. Oct. 1, 2020) (denying motion for leave to amend the complaint to include allegations that COVID-19 was present on plaintiffs' premises because "the presence of the virus itself . . . do[es] not constitute direct physical loss[] of or damage to property").

Legal attempts to distinguish the SAC from the cited cases but overstates the cogency of its allegations and the utility of purportedly supporting caselaw. Many of the decisions cited by Legal have subsequently been distinguished or refuted. For instance, Legal relies on the decisions in Essex Ins. Co. v. BloomSouth Flooring Corp., 562 F.3d 399 (1st Cir. 2009) and Matzner v. Seaco Ins. Co., No. 96-0498-B, 1998 Mass. Super. LEXIS 407 (Mass. Super. Aug. 12, 1998) for the proposition that a virus can cause physical damage. Another session of this Court addressed those cases, however, and held that COVID-19 fundamentally differs from the unpleasant odors and fumes at issue in those cases. See SAS Int'l, Ltd., 2021 U.S. Dist. LEXIS 31093, at *7-8.

Similarly, Legal has brought to the Court's attention the oft-cited decisions in Studio 417, Inc. v. Cincinnati Ins. Co., 478 F. Supp. 3d 794 (W.D. Mo. 2020) and Blue Springs Dental Care, LLC v. Owners Ins. Co., No. 20-CV-00383-SRB, 2020 U.S. Dist. LEXIS 172639 (W.D. Mo. Sept. 21, 2020) to demonstrate that dismissal is inappropriate. Multiple courts have considered those decisions of United States District Judge Stephen Bough and have found them to be outliers. See SAS Int'l, Ltd., 2021 U.S. Dist. LEXIS 31093, at *10-11 n.8 (observing that "courts have either tiptoed around [the] holding [in Studio 417, Inc.],

-10-

criticized it, or treated it as the minority position); Cafe Plaza De Mesilla, Inc. v. Cont'l Cas. Co., No. 2:20-cv-354, 2021 U.S. Dist. LEXIS 29163 (D.N.M. Feb. 16, 2021) ("Blue Springs Dental Care, LLC, represents an outlier case and [] the weight of recent authority, created by the deluge of coronavirus-related insurance disputes, favors [the insurer's] position in almost uniformly rejecting [the insured's] reasoning."). It is clear that the weight of legal authority supports dismissal of Count I.

Legal also attempts to avoid dismissal of Count I by contending that Strathmore chose not to include a specific virus exclusion in the Policy. That argument is, however, unavailing. The "absence of an express [virus] exclusion does not operate to create coverage" for pandemic-related losses. SAS Int'l, Ltd., 2021 U.S. Dist. LEXIS 31093, at *9 (quoting Given v. Commerce Ins. Co., 440 Mass. 207, 212 (2003)). Under the express terms of the relevant provision of the Policy, Legal was entitled to coverage only for losses resulting from "direct physical loss of or damage to" the Designated Properties and the absence of a virus exclusion does not insinuate the expansion of such coverage.

Accordingly, Count I of the complaint will be dismissed.

### 2. Breach of Contract – Civil Authority Coverage (Count II)

Strathmore also seeks dismissal of Legal's claim of breach of contract for failure to provide coverage under the civil authority provision.

That provision of the Policy requires Strathmore to pay for Legal's business interruption losses resulting from an action of civil authority only if that action "prohibits access" to the Designated Properties. Many courts that have addressed equivalent civil authority provisions have drawn a clear line between actions that "prohibit" access to insured properties and those that merely "limit" such access. See, e.g., Riverside Dental of Rockford, Ltd. v. Cincinnati Ins. Co., No. 20 CV 50284, 2021 U.S. Dist. LEXIS 20826, at *12-13 (N.D. Ill. January 19, 2021) (dismissing claim for civil authority coverage because the relevant government orders "did not forbid or prevent the ability to enter" the insured premises but rather "limited the types of services that could be provided"); Brian Handel D.M.D., P.C. v. Allstate Ins. Co., No. 20-cv-3198, 2020 U.S. Dist. LEXIS 207892, at *9-10 (E.D. Pa. Nov. 6, 2020) (dismissing claim for civil authority coverage because "the [Pennsylvania COVID-19] orders limit, rather than prohibit, access to the property");

Sandy Point Dental, PC v. Cincinnati Ins. Co., No. 20-cv-2160, 2020 U.S. Dist. LEXIS 171979, at *7-8 (N.D. Ill. Sept. 21, 2020) (dismissing claim for civil authority coverage because "coronavirus orders have limited plaintiff's operations, [but] no order issued in Illinois prohibits access to plaintiff's premises").

Although Legal alleges that the Orders mandated the closure of and prohibited access to some of its insured restaurants, plaintiff fails to identify any specific Order that expressly and completely prohibited access to any of the Designated Properties. In fact, Legal acknowledges in both the SAC and its memoranda opposing the instant motion that the Orders permitted its restaurants to continue carry-out and delivery operations. Consequently, Legal cannot establish a necessary prerequisite of coverage under the civil authority provision of the Policy. See 4431, Inc. v. Cincinnati Ins. Cos., No. 5:20-cv-04396, 2020 U.S. Dist. LEXIS 226984, at *32 (E.D. Pa. Dec. 3, 2020) ("Plaintiffs' ability to continue limited takeout and delivery operations at the premises precludes coverage under the Civil Authority provision: a prohibition on access to the premises, which is a prerequisite to coverage, is not present.").

To the extent Legal suggests that dismissal of its civil authority coverage claim is inappropriate because it would have suffered greater financial loss by keeping its restaurants open for carry-out and delivery services, it does so in vain.  It is immaterial whether it is economically feasible for Legal to continue restaurant operations solely for carry-out and delivery sales.  Rather, the relevant inquiry is whether the Orders prohibited access to the Designated Properties, which they clearly did not for the reasons stated above.

Because the Orders limit, rather than prohibit, access to the Designated Properties, Legal is not entitled to civil authority coverage under the Policy and Count II of the complaint will be dismissed.

### 3.    Chapter 93A Claim (Count III)

Strathmore seeks to dismiss Legal's Chapter 93A claim, which is based on the allegedly unfair and deceptive investigation and denial of Legal's claim to insurance coverage.

Chapter 93A prohibits "[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce," M.G.L. c. 93A, § 2(a).  In the insurance context, specifically, an insurer does not violate Chapter 93A in denying coverage "so long as [it] made a good faith

determination to deny coverage" even if the insurer's interpretation of the policy was incorrect. Ora Catering, Inc. v. Northland Ins. Co., 57 F. Supp. 3d 102, 110-11 (D. Mass. 2014).  Furthermore,

> [w]hen coverage has been correctly denied . . . no violation of the Massachusetts statutes proscribing unfair or deceptive trade practices may be found.

Harvard St. Neighborhood Health Ctr., Inc. v. Hartford Fire Ins. Co., No. 14-13649-JCB, 2015 U.S. Dist. LEXIS 187495, at *24 (D. Mass. Sept. 22, 2015) (quoting Transamerica Ins. Co. v. KMS Patriots, 52 Mass. App. Ct. 189, 197 (2001)).

The Court has concluded that Strathmore correctly denied coverage under the Policy.  Therefore, dismissal of the Chapter 93A claim is warranted.

### 4.   Declaratory Judgment (Count IV)

Finally, Strathmore contends that Count IV, which seeks a declaratory judgment that the Policy covers Legal's claim and that no exclusion applies to bar or limit coverage for its claim, must also be dismissed.

Because the Court has determined that Legal has failed to plead facts sufficient to demonstrate that it is entitled to coverage under the Policy, dismissal of Count IV is appropriate.

**ORDER**

For the foregoing reasons, the motion of defendants to dismiss plaintiff's complaint (Docket No. 16) is **ALLOWED**.

**So ordered.**

/s/ Nathaniel M. Gorton
Nathaniel M. Gorton
United States District Judge

Dated March 5, 2021